## RINGGOLD *vs.* HAVEN & LIVINGSTON.

On appeal, under the Act of Feb. 28th, 1850, the decisions of the court of First Instance during the progress of the trial are reviewable, although no exception was taken at the time, and no bill of exceptions has ever been made.

The court may order the plaintiff to be non-suited against his consent.

Where the evidence would not authorize a jury to find a verdict for the plaintiff, or if the court would set it aside, if so found, as contrary to evidence, in such case it is the duty of the court to nonsuit the plaintiff.

The practice of nonsuit and of demurrer to evidence considered. *Per* BENNETT, J.

Where a cause comes up on appeal, on the record alone, properly so considered, without purporting to contain any of the testimony on the trial, the court will presume that sufficient testimony was given to warrant the judgment. *Per* BENNETT, J.

Where an exception is taken to the decision of a court refusing a nonsuit, it devolves upon the plaintiff, on the settlement of the bill, to see that all the evidence material for him in sustaining the decision complained of, is inserted in the bill of exceptions.

Ringgold *v.* Haven.

If there be some evidence which tends or conduces to prove *all* the material allegations of the complaint, the sufficiency thereof is a question for the jury : but where there is *no evidence on some material point* necessary to be proved in order to make out a cause of action, it becomes the duty of the court, on motion of the defendant, to order a nonsuit.

An action was brought against the defendants to recover damages for injuries to goods in being carried from New York to San Francisco, founded not upon contract, but upon the common law *duty* of carriers ; *Held,* that it was necessary for the plaintiff to establish, not only the delivery of the goods to the defendants, but that they were engaged in the business of transporting goods *as common carriers ;* and there being no evidence whatever that the defendants were common carriers ; *Held,* also, that a motion for a nonsuit should have been granted by the court below.

Where a defendant moved for a nonsuit, and afterwards introduced evidence supplying the defect in the plaintiff's testimony on which the motion for nonsuit was founded ; *Held,* that the defendant had thereby waived his motion, and could not insist upon it in this court.

In an action against a common carrier, the rule of damages is the value of the goods at the port of delivery, and not the invoice price or the value at the port of shipment.

APPEAL from the court of First Instance of the district of San Francisco. The facts are fully stated in the opinion of the court.

*McDougall,* (attorney general,) for plaintiff.

*E. Temple Emmett,* for defendants.

*By the Court,* BENNETT, J. Appeal from judgment of the court of First Instance for the district of San Francisco. The action was brought against the defendants as common carriers for not safely transporting certain goods of the plaintiff from the port of New York to the port of San Francisco. The complaint was in the ordinary form of a common law declaration *in case* against a common carrier, and the plea was the general issue. At the trial the plaintiff himself was sworn as a witness by the consent of the defendants, and testified that sometime in the year 1849 he *consulted* Haven, one of the defendants, about the shipment of goods from New York to San Francisco ; who informed him that goods shipped at the former port would arrive at the latter, in about sixty days after their shipment, and, at the same time, gave him a card, whereon were printed the names

of Livingston & Wells.   The plaintiff, thereupon, wrote to New York directing his agent to send the goods in controversy in this  suit to San Francisco by Livingston & Wells, to whom Haven had referred him.   The freight for the transportation was paid to the defendants, but whether before shipment or after arrival of the goods, does not appear.   The invoice price of the goods was $219,94, and their market value at San Francisco $2,700.   On their arrival they were found to be much damaged from having been long immersed in water. Upon proof of these facts, the plaintiff rested his case, and the defendants moved for a nonsuit.   The court, however, held, that the defendants, having made a contract with the plaintiff, without disclosing their principal, or giving notice that they were acting as agents, were liable in this action, and refused the nonsuit.

The defendants then gave in evidence a bill of lading, which was handed to them by the plaintiff, on his receiving from them the goods in question.   The bill of lading was in the ordinary form, and was *signed by " Livingston, Wells & Co.,"* and by it, the articles therein mentioned were consigned to the plaintiff, to the " care of Haven & Livingston," San Francisco.   The defendants then claimed, that the evidence furnished by the bill of lading was sufficient in law to bar the action against them, but the court held that a contract existed between the plaintiff and the defendants for the transportation of the goods, and that the defendants were liable in this action upon that contract. The defendants then contended that the measure of damages should be the price of the goods at the place of shipment, added to the expenses which the plaintiff had incurred, but the court was of opinion, that it would be more equitable to add the price at the place of shipment to the expenses of the plaintiff and the value of the articles at San Francisco, and divide the sum total by two.   The defendants objected to this method of arriving at the amount of damages, but the court rendered judgment for the sum resulting from the equitable estimate above stated.   The cause was tried without a jury; and the paper upon which the testimony and proceedings at the

Ringgold *v*. Haven.

trial appear in the record, is termed upon its face a bill of exceptions.

Under these proceedings, it is contended in this court by the counsel for the appellants ; 1st, That the court below erred in not granting the nonsuit prayed for ; 2d, That the bill of lading showed that the contract for the transportation of the articles mentioned therein was a contract between the plaintiff on the one side, and Livingston, Wells & Co. on the other, and not a contract to which the defendants were parties; 3d, That, even though a contract for the transportation of the goods in question between the plaintiff and the defendants were proved, there was yet no evidence to sustain the averment in the complaint that the defendants were common carriers, and that this action could not be maintained without establishing that position; and 4th, That the court erred in estimating the damages. The counsel for the respondent contends ; 1st, That the paper containing the testimony and proceedings at the trial, must be regarded strictly as a bill of exceptions, and that it does not appear therefrom that any exception was taken to the ruling of the court ; 2d, That the court below could not direct a compulsory nonsuit to be entered against the plaintiff; 3d, That the evidence tended or conduced to prove all the facts necessary to be established in order to warrant the judgment, and that a jury would have been, and the court sitting as a jury was, justified in finding such facts from the evidence returned ; and 4th, That this court is bound to presume, in favor of the proceedings, that there was evidence given, though not returned, sufficient to warrant the finding of the court.

In considering these various points, it is proper, in the outset, to direct attention to the position of the counsel for the respondent, that the portion of the record, which purports to set forth the testimony and proceedings at the trial, is a bill of exceptions, and should be subjected to the rigorous rules of the common law practice as applied to bills of exceptions. If this position be tenable, we cannot, then, upon this appeal, review the decision of the court denying a nonsuit, for it does not ap-

pear that the defendants took a proper exception, on this ground, at the very time of the trial.

The judgment appealed from was rendered after the act of Feb. 28th, 1850, took effect. From that act we derive all the authority we have, to entertain an appeal, in any case, from a judgment of the court of First Instance, and it follows, therefore, that the only question to be determined, upon the point under consideration, is whether the proceedings upon this appeal are conformable to that act. This statute enjoins upon us to look at the substance of the proceedings at the trial, rather than to require a strict compliance with technicalities and forms in spreading those proceedings upon the record. In no portion of it, is a bill of exceptions spoken of, or alluded to, or in any way recognized. This omission is, we presume, not accidental. It is owing, no doubt, to the intention of the legislature to obviate the nice questions of practice, which frequently arise upon bills of exceptions, and which, in the condition of legal procedure then prevalent in our courts, might become the instruments of enabling a party to evade the real merits of an appeal. By section 18 of the statute above referred to, it is enacted, that " when an appeal shall be taken from any judgment " or order hereafter rendered or made, on the ground of error " in the proceedings at the trial, a *case* shall be prepared by " the appellant, containing such portion of the testimony, de- " cisions of the court and other proceedings, as shall be neces- " sary to present clearly to the appellate court the alleged " ground of error." The sections immediately succeeding, point out the mode in which the case shall be served, amended and settled, and section 22 requires the clerk to return such case upon appeal. The section last cited also declares, that if no case shall have been made by the parties, it shall be the duty of the *court below to make a return of the testimony and proceedings* at the trial. The statute provides these two modes, and these alone, for bringing before the appellate court, for review, the errors which may have occurred in the course of the trial. Whether, therefore, the portion of the record referred to, be a case made by the parties, or a statement of the proceed-

Ringgold *v.* Haven.

ings drawn up and returned by the court—whether it be denominated a bill of exceptions, in the terms of the common law, or an authenticated copy of the record, in the language of the civil law,—we are to look at the substance of its contents, and to disregard its imperfections in form; and viewing it in this manner, we see that the defendants moved for a nonsuit, and that the court denied the motion—that after their evidence was closed, they insisted that it was sufficient to bar the action, and that the court decided otherwise. It is a matter of no account, whether they *excepted* to the ruling of the court or not; or if they did *except*, whether the *exception* appears upon the record.

We are now ready to consider the questions; 1st, Had the court the legal right to order the plaintiff to be nonsuited without his consent? and 2d, If so, did the court err in refusing to grant the motion for a nonsuit in this case?

First, As to the right of the court to direct a compulsory nonsuit. Upon this point, we are met by a contrariety of authorities and a diversity of argument. In some of the states, the affirmative, in others the negative, of the proposition is asserted in theory and maintained in practice. In some, it is held, that the court has no right, in any case, to nonsuit the plaintiff, even though his evidence be insufficient in law to support his action; whilst, in others, it is settled, that a jury should be allowed to receive no cause until the court is satisfied that the evidence is sufficient *in law* to authorize the jury to find a verdict in favor of the plaintiff. In all, however, it is agreed, that cases may, sometimes, under certain forms, be withdrawn from the jury and reserved for the sole consideration and determination of the court. This last is a common ground in the English courts, in the federal courts of the Union, and in the courts of the various states. The only difference upon the subject which appears to exist, is as to the manner in which the conceded end shall be reached. In the federal courts, and in the courts of some of the states, the object is attained by means of the cumbrous and complicated machinery of a demurrer to evidence; in the courts of others of the states, through the simpler and easier pro-

cess of motion for non-suit at the trial. In both cases, the same end is arrived at; and the one remedy as well as the other can be applied only where the plaintiff shall have failed to make out a case which the law says is proper to be submitted to a jury. The former practice is constantly passing more and more into disfavor, and the latter usurping its place. Thus, at the present day, in the English courts, although it is held, in theory, to be optional with the plaintiff whether he will be nonsuited or not, and that he may compel the defendant to resort to a demurrer to evidence, yet the constant practice there is for the plaintiff, upon the suggestion of the judge that the evidence is insufficient, to submit to a nonsuit, with leave to move the court in bank to set it aside. (*Graham's Pr.* 270.) In the state of New York the practice of compulsory nonsuit is perfectly well settled. (*Clements* v. *Benjamin*, 12 *J. R.* 298; *Pratt* v. *Hull*, 13 *id.* 334; *Stuart* v. *Simpson*, 1 *Wend.* 376; *Betts* v. *Jackson*, 6 *Wend.* 173.) The reasoning of the court upon this subject in *Pratt* v. *Hull* is convincing: " The answer to this abstract question," they say, " cannot ad-" mit of a doubt. This must be a power vested in the court. " It results necessarily from their being made the judges of the " law of the case where no facts are in dispute. It is a pure " question of law, whether under a given state of facts, the " plaintiff is in law entitled to recover. Unless this is a ques-" tion of law for the courts, there is no meaning in what has " been considered a salutary rule in our courts of justice, that " to questions of law the judges are to respond, and to questions " of fact the jury." The general rule is well laid down in *Stuart* v. *Simpson* above cited, as follows: " If the evidence " would not authorize a jury to find a verdict for the plaintiff, " or if the court would set it aside, if so found, as contrary to " evidence, in such case it is the duty of the court to nonsuit " the plaintiff." The power of a court, acting according to the course of the common law, to set aside a verdict, which is contrary to, or unsustained by, the evidence, is too clear to admit of a doubt; and the power of a civil law court of Second Instance to reverse the judgment of a court of First Instance, on

Ringgold *v.* Haven.

the ground that it is against the weight of evidence, is also un-
questionable. If, therefore, upon a given state of facts, a court
would be obliged to set aside a verdict of the jury as against
the evidence, we see no reason or propriety in submitting such
facts to them for their consideration. When their determin-
ation will be a nullity, why compel them to deliberate? Such a
course is neither creditable to the law, nor complimentary to
the jury. Nor, in adopting the practice of nonsuit, is there to
be apprehended any danger of encroachment upon the rights of
parties, or of abridgement of the prerogatives of juries. This
system of trial can be expected to operate beneficially, and with
certain, not fickle, results, only when the practical sense of a
jury is guided by, and acts in subserviency to, established prin-
ciples of law, expounded and enforced by the court. We are
of the opinion, therefore, that the power of compulsory nonsuit
should be upheld.

Secondly; Did the court err in refusing to grant the motion
for a nonsuit in this particular case? The counsel for the ap-
pellants claims, that it should have been granted, on the ground
that there was no evidence given, upon which the law would
permit a jury to find the truth of the two material averments in
the complaint, that the defendants were common carriers, and
that the goods in controversy were delivered to, and received
by them, as such. The counsel for the respondent endeavors
to support the ruling of the court by the positions, that there
was some evidence tending or conducing to prove each of these
allegations, and that the sufficiency of such evidence was a
question solely for the decision of the judge, as it would have
been for the determination of a jury, had a jury been called;
and further, that, even though the testimony returned with the
record be insufficient in law to uphold the refusal of the non-
suit, an appellate court must presume, that the entire evidence
given by the plaintiff would justify the ruling of the court, and
that only a portion thereof is returned.

The last position we shall examine first. The doctrine of
presumption asserted, undoubtedly applies when a case comes
up on the naked record without any attempt to return the tes-

timony. Such was the case of *Gonzales* v. *Huntley*, decided at the March term of this court. The same rule is applicable, commonly though not universally, to a strict bill of exceptions; of which it is not the office to return the testimony farther than is essential to explain, and give point to the particular exceptions reserved. But it is not properly applicable to what is denominated a *case*, the very scope and object of which is, to bring up the entire testimony and proceedings which may be deemed of importance by either party. The presumption here is, that all material things are embodied in the case. The latter presumption also arises even upon a bill of exceptions, where the exception taken is to the decision of the court refusing a nonsuit. In such event, it is the business of the plaintiff, upon the settlement of the bill, to see that all the evidence, material for him in sustaining the decision complained of, is spread upon the record.

The other position of the counsel for the respondent is, when slightly modified, correct; if there be some evidence, which, in legal construction, fairly tends or conduces to prove *all* the material allegations of the complaint, the sufficiency thereof is a question solely for the consideration of the jury. But here the rule stops. And, therefore, whilst it is conceded, that where the evidence is conflicting, or doubtful, or even slight, it is proper that it should be left to the jury to pass upon, yet, at the same time, where there is *no evidence upon some material point* necessary to be proved in order to sustain the complaint, equally as where there is no evidence at all upon *any point*, it becomes the duty of the court, upon the motion of the defendant, to order a nonsuit.

Let us now apply the principles above laid down to the case at bar. To sustain the complaint, it was indispensable for the plaintiff to establish, in addition to other matters, the two material averments that the defendants were common carriers, and that the goods in question were delivered to, and received by them, as such, for the purpose of being transported, for hire, from New York to San Francisco. Proof of these averments would have obviated the necessity of showing any other or fur-

Ringgold *v.* Haven.

ther contract between the parties; for, the action is founded upon the common law *duty* imposed upon *common carriers*, and sounds, not in contract, but in tort. It follows, that, though there may exist an express contract, in a suit upon which the defendants would be liable according to its terms, it cannot be enforced under this complaint, without proving both the character of the defendants and the delivery of the goods.

The sole evidence offered by the plaintiff of the delivery, consists in the statement in the record, "that the plaintiff gave in " evidence the market value of said goods in San Francisco and " the amount of damage sustained, as appears by being long " immersed in water." Whether this be evidence from which a jury might legitimately infer that the property was ever delivered to the defendants, it is unnecessary to determine; for the reason, that the defendants themselves, by their own evidence, showing the possession of the goods at one time in the defendants, supplied this defect in the plaintiff's case. This ground of nonsuit was, therefore, waived by the defendants at the trial. But after an attentive and careful perusal of the whole record, we cannot find a *scintilla* of evidence bearing, in any way, upon the point whether the defendants stand in the position of common carriers. This, however, is an affirmative fact, which the plaintiff was bound to make out; and there being no evidence upon it, a verdict of the jury finding it to be true, could not be upheld by the court. The motion for a nonsuit should, therefore, have been granted.

We have thought proper to consider, somewhat at length, the practice of nonsuit, as it is a subject upon which it may be of interest to the profession to procure an early knowledge of the views of the court. Inasmuch, however, as a new trial is to be had, it is expedient that the cause should then be finally disposed of, and, for this reason, we shall proceed to give our views of the other points made by counsel.

The testimony of the defendants, taken in connection with that of the plaintiff, shows that the court below erred upon the whole case. The plaintiff himself testifies, that when he applied to Haven concerning the transportation of the articles in suit,

Haven gave him a card whereon were printed the names of *Livingston & Wells*, and that the plaintiff directed his agent in New York to send the goods to San Francisco by *Livingston & Wells, to whom Haven had referred him.* The bill of lading, under which the goods were forwarded, is signed by *Livingston, Wells & Co.,* and consigns the contents to the plaintiff, *to the care of Haven & Livingston, San Francisco.* It thus appears that *Livingston, Wells & Co.* were the *carriers,* and that all Haven & Livingston had to do with the matter was to receive the goods, at this end of the line, as agents or warehousemen. The fact that the freight was paid to them is, in no wise, inconsistent with the fact of their being simply agents in the transaction. In this view of the case, the only ground upon which *this* action can be maintained against the defendants, is by proving that Livingston, of the firm of Haven & Livingston, is the same person as Livingston, of the firm of Livingston, Wells & Co.; or that the former firm, were partners, or that one member thereof was a partner, in the latter firm.

The sole remaining question is as to the proper rule for estimating the damages; in other words, whether the price of the goods at the place of shipment, or the value thereof at the port of delivery, should be adopted as the criterion for determining the amount of the recovery. Upon this point the authorities do not coincide—some jurists of eminent ability holding the price at the place of shipment to be the limit, or as the case may be, the extent, of damages, which the plaintiff is entitled to recover —but we are of opinion that the weight of authority, as well as the reason of the thing, is in favor of making the value of the goods at the port of delivery the rule for determining the amount of damages. (See *Sedgwick on Das.* 370.) The shipping contract requires the carrier to transport the cargo safely, and deliver it at the *terminus* agreed upon; in case of non-fulfilment, the principles of law would dictate, that he ought to be responsible to the other party for an amount which would cover the actual damage sustained. That amount is the market value of the goods at the port of delivery; for, if the contract had been fulfilled, the shipper would have realized that sum,

and that sum only. This is the damage strictly and necessarily resulting from the breach of the contract, and an estimate upon this basis seems to be more in unison with the rules for computing damages in most other cases, than the conflicting rule referred to.

New trial granted, costs to abide the event.