## C. G. HIDDEN *v.* DANIEL M. JORDAN.

NEW TRIAL AFTER REVERSAL OF JUDGMENT.—When a judgment is reversed and a new trial granted in general terms, the case goes back for trial upon all the issues of fact raised by the pleadings.

PRESUMPTION THAT STATEMENT CONTAINS ALL THE EVIDENCE.—If the statement on motion for a new trial specifies certain particulars, in relation to which it is claimed a finding of fact is unsupported by the evidence, the presumption will

Points decided.

be that all the evidence upon the point specified is contained in the statement, although the record does not show affirmatively that such was the case. (*Owen v. Morton,* 24 Cal. 375, as to this point, overruled.)

EXCEPTIONS TO FINDINGS UNDER ACT OF 1861.—If the Judge neglects to find the facts, or if he omits to find upon any issue essential to the determination of the case, an exception may be taken, under the Act of 1861, to the want of a finding in the former case, or for a defect in the latter, but the exception for a defective finding must point out wherein the defect consists.

MANNER OF FINDING FACTS.—A finding should consist of a concise, distinct, pointed, and separate statement of each essential fact established by the evidence, in the proper order, without any of the testimony by which the facts are proved, followed by a similar statement of the conclusions of law drawn from the facts thus found. An opinion is not a finding. The latter forms a part of the judgment roll; the former does not.

GENERAL AND SPECIFIC FINDING OF FACTS.—If a discrepancy exists between a general finding and the more specific findings of particular facts, the specific findings must control.

REFERENCE TO TAKE AN ACCOUNT.—Where the taking of an account is required, it is in the discretion of the Court to take the account, or to refer it to a Commissioner or referee to state it.

MORTGAGEE IN POSSESSION.—A mortgagee in possession is accountable for the actual receipts of the net rents and profits after deducting necessary expenses of managing the property.

SAME.—Taxes paid, and necessary repairs made by the mortgagee in possession, are included in necessary expenses.

SAME.—New and permanent improvements in fences made by a mortgagee in possession are not necessary expenses for which he can recover, unless the fences were necessary for the protection of the crops. But if the value of the rents and profits are enhanced by the fences made, the mortgagee cannot be charged with such enhanced value unless an allowance is also made for the value of such fence.

SAME.—A mortgagee in possession is not bound to work the land himself if he can rent it for its full value.

INTEREST.—Circumstances under which a parol contract for a larger rate of interest than ten per cent per annum will be enforced.

APPEAL from the District Court, Seventh Judicial District, Solano County.

Plaintiff recovered judgment in the Court below and defendant appealed.

The other facts are stated in the opinion of the Court.

*Thomas M. Swan,* for Appellant.

*M. A. Wheaton,* for Respondent.

By the Court, SAWYER, J.

This cause was before the late Supreme Court. The principles of law applicable to the case were then declared, and the cause remanded for a new trial. (21 Cal. 92.) The appellant insists, that, so far as anything is shown to the contrary by the record, on the second trial the Court and counsel proceeded on the theory that the facts as well as the law had been settled, and that only an account remained to be taken; that no evidence on the other issues in the case appears to have been introduced, and that the main issues formed by the pleadings do not appear to have been tried or determined. The respondent's counsel, on the contrary, avers, that all the issues were in fact tried, notwithstanding the fact that the record does not affirmatively show it. On the former appeal a new trial was ordered in general terms, and the case undoubtedly went back for trial upon all the issues of fact raised by the pleadings. It does not affirmatively appear in the record whether testimony was introduced on all of the issues referred to by counsel for appellant or not. The record does not purport to contain all the evidence. The statement on motion for new trial designates the grounds of the motion, and, as required by section one hundred ninety-five of the Practice Act, specifies certain particulars, in respect to which the appellant would claim the findings to be unsupported by the evidence, all of which relate to questions affecting the state of the account between the parties. The statute requires the testimony in the statement to be confined to those particulars. If any testimony in favor of plaintiff bearing upon the points specified was omitted by defendant, it was the duty of plaintiff's counsel to see that it was supplied by amendments. But he was not only not required to introduce any testimony not bearing upon other points, but it would have been improper for him to do so. The presumption, therefore, is, that the statement does not contain all of the testimony, or any testimony upon the points not specified. Under the statute, as it now stands, it must be presumed that the verdict

or decision is sustained by the evidence in all respects, except in those particulars in which the statement specifies the evidence to be insufficient. For these reasons we can only consider the particulars thus specified.

Exceptions were taken to the findings as being defective in several particulars, in pursuance of the Act of 1861 (Laws 1861, p. 589), and defendant moved to vacate them on that ground. The facts were not so fully stated in the findings as is desirable in cases of the character under consideration. In most of the material particulars sufficiently designated in the exceptions, the defects were subsequently supplied by amendments filed by the Judge. In some of the exceptions the respondent not only designated the point upon which he desired a finding, but also designated how he desired the Court to find upon the point, and excepted to the refusal to find in the way designated. We have often seen similar exceptions in other cases. There seems to be on the part of many, a misapprehension as to the character of the exception to be taken under the Act of 1861. These exceptions are not—as seems to be supposed—to be taken to the finding, on the ground that a fact is erroneously found. Errors in the finding are not to be corrected in this mode. Nor is there any such practice provided for in this Act as vacating findings on the ground that they are defective. The design of the statute is to enable the Court, at the instance of the party, to supply defects, as where there is an omission to make any finding at all, or to find on any issue of fact essential to the determination of the rights of the parties. A party is entitled to a finding, and he is also entitled to have a finding upon every issue raised, which is essential to the determination of the case. If the Judge neglects to file his decision in writing, stating the facts found, and his conclusions of law, or if he omits to find upon any issue essential to the determination of the case, the party desiring a finding may except for the want of a finding in the former case, or for a defect in the latter; but when he excepts for defects, the "particular defects shall be specifically and particularly designated"—that is to say,

he must specify, particularly, the point or issue upon which he requires the Court to state the fact found, but he is not authorized to dictate how the Court shall find. That question must be determined by the Court from the evidence in the case. If the Judge errs in his findings, the remedy for the error is by motion for a new trial. The exception as above stated is the only exception contemplated by the Act of 1861. But the exceptions contemplated by the Act must be filed within five days after the making of the finding or decision, and must be brought to the notice of the Judge, in order that he may have an opportunity to supply the defects complained of.

While on this subject—although the finding in this case is not objectionable on that ground—we desire to suggest to District Judges another fault of frequent occurrence in the cases appealed to this Court. In many instances the finding is an *opinion* rather than a *finding of facts and conclusions of law*. In it the facts found, a rehearsal of evidence, without stating the fact supposed to be proven by it, conclusions of law and argument, are all mixed up in such a way that it is difficult, if not impossible, to tell what the ascertained facts of the case are. The finding of facts and conclusions of law contemplated by the statute is something different from an opinion. The finding should consist of a concise, distinct, pointed and separate statement of each specific, essential fact established by the evidence, in its proper order, without any of the testimony by which the facts are proved, followed by a similar statement of the conclusions of law drawn from the facts thus found. This is the finding contemplated by the statute, which is to be annexed to and form a part of the judgment roll. If an opinion is written—and we are always glad to find one in the transcript—it should be entirely separate from the finding, and filed among the papers in the case. The Practice Act recognizes an opinion as something different from a finding. (Sections 180, 203, 346.)

Upon comparing the fourth original and very general finding, to the effect that the rents and profits have fully repaid

39

to defendant the four thousand dollars and interest thereon, and all expenditures upon the land, with the several more specific findings in the amendments, we are unable to harmonize them.   If a discrepancy exists, the more specific findings of particular facts must control.   According to both the fourth original finding, and the first amendment the principal sum to be paid is four thousand dollars; and according to the said amendment the rate of interest is " two and a half per cent per month, payable monthly; and if not so paid, a new note was to be given therefor, itself drawing two per cent per month."   And on January 4th, 1859, the amount of interest then unpaid was one thousand two hundred and fifty-eight dollars and eighty-six cents.   According to the third amendment the full amount of interest then due had been at that time tendered and rejected, and the interest then due thereby ceased to draw interest.   But the tender of four thousand dollars on the 4th was held—and we think correctly—not to be a good tender, because it was insufficient to pay the principal and interest.   The one thousand five hundred dollars tendered on the 3d for interest undoubtedly formed a part of the four thousand dollars tendered for principal on the 4th, and was made to perform double duty, and the tender was evidently not made in good faith.   The tender on the 4th being bad, the interest on the four thousand dollars continued to run against the plaintiff.   The Court does not find, nor does the evidence show at what time in the fall of 1859 defendant realized his money from the products of the premises.   But he rented them about the first of November, at which time a new farming year commenced, and, this being the end of the farming year, is probably, under the ordinary rules for making rests in such cases, the earliest moment at which the plaintiff would be entitled to charge the profits of the year against defendant. Charging them at this time, the four thousand dollars principal had run at interest, in round numbers, ten months, since the 4th of January, 1859, which at two and one half per cent on the principal, and two per cent on each monthly instalment of one hundred dollars interest, from the date it fell due,

would, on the 4th of November, 1859, amount to five thousand and ninety dollars. The Court also found that the defendant had paid six hundred and five dollars and sixty-four cents taxes, " a portion being paid each year," without stating what portion, and that, during the time he was in possession, he built stone wall fencing of the value of one thousand two hundred dollars, without stating in what years. As to the taxes, the several amounts, and the times at which they were paid, are admitted in the record. On the 1st of November, 1858, the amount of taxes paid was ninety-six dollars and thirty-nine cents ; and on the 15th of October, 1859, the further sum of ninety-eight dollars and seventy cents was paid. Allowing one year's interest at the legal rates on the first sum, we have a credit for taxes in favor of defendant, in round numbers, of two hundred and four dollars, which, added to five thousand and ninety dollars, gives the sum of five thousand two hundred and ninety-four dollars due defendant, November 4th, 1859. The Court found the rents and profits of that year to be three thousand seven hundred and thirty-one dollars. Charging this sum against defendant on that day, and deducting it from the said amount due him, there would remain—if we have made no mistake in the computation—a balance in his favor of one thousand five hundred and sixty-three dollars. The Court found the yearly value of the rents and profits for the next three succeeding years at one thousand one hundred dollars, and that defendant received five hundred dollars for the year 1863. Regarding them as chargeable against the defendant at the end of each year, say on the 4th of November, and casting the interest on the above balance and accruing monthly interest to November, 1860, adding the taxes paid that year, and deducting the one thousand one hundred dollars profits of the year, taking this balance for a new principal, and so continuing to the end, regarding the five hundred dollars for 1863 as paid in November, 1862, and deducting it at the same time as the last one thousand one hundred dollars, it will be found that on the 4th of November, 1862, the four thousand dollars and interest accruing subsequent to January 4th, 1859, together

with the taxes have been paid, and a balance left of something over seven hundred dollars in favor of the plaintiff. But the one thousand two hundred and fifty-eight dollars and eighty-six cents, interest, which accrued in favor of defendant prior to January 4th, 1859, upon which interest was stopped by the tender, has not yet been disposed of. Deducting the balance in favor of plaintiff at the close of 1862, after satisfying the principal, interest, and taxes accrued subsequent to January 4th, 1859, from said item of one thousand two hundred and fifty-eight dollars and eighty-six cents, interest accrued before that time, and all of the rents and profits found by the Court to be chargeable against defendant, will have been absorbed and a balance of more than four hundred dollars will be left in favor of defendant. To this balance the one thousand two hundred dollars paid for fencing, of which no account has yet been taken in our computation, is still to be added. The Court allowed this sum for fencing as one of the expenditures, and it must therefore be presumed that it was found to be necessary, there being no finding on that point, and no exception for defect in this particular. The mode suggested of computing the interest and stating the account upon the particular facts found, is the most favorable one to the respondent that can be adopted. If we are anywhere near right in our computations, it seems impossible to harmonize the specific findings in the amendments with the fourth original finding, for by the former there was really a very considerable balance still due the defendant. And if so the judgment is necessarily erroneous and a new accounting must be had.

Appellant insists that the Court erred in refusing to make an interlocutory order settling the principles upon which the accounting was to be had, and to refer it to a Commissioner or referee to state the account. The Judge is at liberty to state the account between the parties and determine all the questions in the case himself, if he chooses to do so. But in a case like this, where his time is limited, it would be very inconvenient, if not almost impossible, to do it. It would be singular, indeed, if, in the ordinary hurry of a trial by the

Court, some error should not occur.  Unquestionably, the better and safer practice would be, in such a case, to refer it to some competent person to state the account.  But the Court can pursue such course as it may deem advisable.

A mortgagee in possession " will be accountable for the actual receipts of the net rents and profits, and nothing more, unless they were reduced or lost by his wilful default or gross negligence.  By taking possession he imposes upon himself the duty of a provident owner, and he is bound to recover what such an owner would by reasonable diligence have received." (4 Kent's Com. 166.)  This is the rule applicable to the present case.  During the year 1859, when the defendant worked the premises himself, he is bound to account for the net proceeds of the farm after paying all the necessary expenses of carrying it on.  He is entitled to deduct the taxes paid and necessary repairs.  As a general rule, the cost of new and permanent improvements cannot be allowed.  There may, however, be special circumstances which would justify a Judge in making the allowance.  In this case the value of the fencing cannot be allowed unless the fence constructed was necessary to the protection of the crops.  But if the value of the rents and profits were enhanced in consequence of the building of the fence, defendant cannot be charged with such enhanced value, unless an allowance is also made to him for the value of the fence.  Although the defendant was chargeable for the actual net profits while he carried on the farm, he was not bound to work it himself, provided he could rent for the full yearly value of the premises to suitable parties, who would manage it in a husbandlike manner.  And while he thus rented it at its full value, he was only chargeable for such value.  Of course he would be chargeable for all the rents received, after deducting necessary expenses, during the years the premises were rented.  The evidence, therefore, should be directed to the value of the premises and the rents received, and not to the actual amount of the products raised by the tenant, and the net amount such tenant was enabled to realize.  The tenant took the risk of a favorable or unfavora-

ble season. He might pay more as rents than he could actually realize in any given year, and he might pay less. As to the crops on the premises, when they were purchased they belonged to the real purchaser, and not the party standing in the position of mortgagee, and if they were turned over to the defendant for the purpose of making the last payment on the purchase money out of the net proceeds derived from them, or were taken by defendant and devoted to that purpose independent of any express agreement in regard to the crops between plaintiff and defendant, then they stand in the same position as other rents and profits, and a payment out of them upon the purchase money must inure to the benefit of the plaintiff, and be regarded as a payment by him. Of course, if they were purchased of plaintiff and paid for by defendant they belonged to the purchaser. The defendant is entitled to have the taxes and the ordinary necessary expenses and necessary repairs deducted from the receipts of the year in which they were respectively paid.

After an attentive examination of the transcript and briefs of counsel, we are forced to the conclusion that the judgment should be reversed, and that so much of the finding as relates to the accounting should be vacated, and to that extent a new trial and a re-accounting between the parties on the principles herein indicated be had. And it is so ordered.

Mr. Justice CURREY expressed no opinion.

By the Court, SAWYER, J., on petition for rehearing.

The conclusions announced in our opinion before filed were not adopted without an anxious and thorough investigation of the case presented by the record. There are, however, some portions of the opinion referred to in the petition for rehearing that require further explanation, and, perhaps, ought not to be applied to this case; and some new points presented that we do not feel at liberty to pass over without notice.

It is first insisted that in respect to the points wherein the

evidence was held to be insufficient to sustain the findings, the Court applied a different rule from that followed in *Owen* v. *Morton*, 24 Cal. 376. In that case it was said, substantially, that where the record fails to negative the fact, that there was other proof upon the point in question, when it appears that there was other evidence in the case, the finding of the Court below would be presumed to have been supported by the evidence omitted. The portion complained of as being inconsistent with the rule thus stated, is the last paragraph of the following passage: "The statement on motion for a new trial designates the grounds of the motion, and as required by section one hundred ninety-five of the Practice Act, specifies certain particulars in respect to which the appellant would claim the findings to be unsupported by the evidence, all of which relate to questions affecting the state of the accounts between the parties. The statute requires the testimony in the statement to be confined to those particulars. *If any testimony in favor of plaintiff bearing upon the points specified was omitted by defendant it was the duty of plaintiff's counsel to see that it was supplied by amendments.*" This was said *arguendo* in discussing a point decided by us in favor of the respondent, but it turns out to be applicable to other points decided against him. Neither the case of *Owen* v. *Morton*, nor any other upon this point, was called to our attention by counsel. Upon examination of the case, however, it is evident that the propositions announced in the two cases are inconsistent, and it becomes necessary to determine which is right, and to establish the rule upon the point by which we shall in all cases hereafter be governed. In the case of *Owen* v. *Morton*, the point was not made or discussed by counsel, and we followed, without questioning its correctness, the rule as announced in *Dawley* v. *Hovious*, 23 Cal. 104, and in some previous decisions, also, apparently adopted without discussion. And we may have followed the same rule in subsequent cases. But since the decision in *Owen* v. *Morton*, and since the submission of this cause, the question has been fully discussed by counsel in another case, in which it is claimed that, if the

rule ever was correct under the provisions of our Practice Act, it ought not to be applied to statements prepared under the very specific provisions of section one hundred ninety-five as it now stands. And, after a careful examination of the question, we are satisfied that the rule as announced in the opinion in this case harmonizes with the general theory of the other provisions of the section as construed by us, and is the proper rule to be adopted. The section provides that, "When the notice designates as the ground upon which the motion will be made, the insufficiency of the evidence to justify the verdict, or other decision, the statement shall specify the particulars in which such evidence is alleged to be insufficient." * * * "The statement shall contain so much of the evidence or reference thereto as may be necessary to explain the particular points thus specified and no more." The point wherein the defect of evidence is claimed to exist must, then, be specified, and so much of the evidence as is necessary to explain it must be introduced, and no more. The attention of the other party is thus directed to the weak point in his evidence, and if anything has been omitted which would tend to strengthen his case on that point, he has an opportunity afforded to supply it by amendment, and it is his duty to do so. And, in practice, we have no doubt that this is in all cases done. It is for this purpose, in part, that a party is authorized to have a defective or erroneous statement settled by the Judge. When the statement has been filed, and the opposite party has had an opportunity to suggest the necessary amendments, and the statement has been thereupon agreed to, or settled by the Judge, we think he must be regarded as being estopped from averring that there may be other testimony upon the point. As to all other points not specified in the statement the presumption would be that the evidence sustains the verdict, and no question can be made upon it. This view is sustained by the principles announced in the decision of *Ringgold* v. *Haven*, 1 Cal. 116. After stating instances in which the presumptions as to the sufficiency of the evidence would be in favor of the correct ruling of the

Court, Mr. Justice Bennett says : " But it is not properly applicable to what is denominated *a case*, the very scope and object of which is to bring up the entire testimony and proceedings which may be deemed of importance to either party." The " case " referred to here we understand to be just such a case as is contemplated by our present statutes, denominated a " statement," or something analogous to it, and governed by the same principles. (See Grah. Pr. 290.) Without any expressed intention to overrule this decision, there seems to have been a subsequent, though perhaps inconsiderate departure from it. At all events, we think the rule as now stated by us should be applied to statements hereafter prepared under the Act as it now stands. When the rule is once understood, to require a certificate that the record contains all the evidence introduced on each point specified would only be to add so much useless matter. We shall, therefore, follow this rule in all cases where the statements are prepared after the publication of this opinion.

The statement in this case was made up since the decision in *Owen* v. *Morton*, and the parties may have relied upon that case and the others referred to. We should for this reason feel bound to grant a rehearing, if we deemed it necessary to determine the cause upon the question as to the sufficiency of the evidence to support the findings. But in our opinion it is not, as will be seen hereafter.

"Another question," says the petition, "which has not attracted the attention of the Court is this : Can Jordan, without express contract in writing, collect more than ten per cent per annum upon his four thousand dollars ?" The question was not noticed by the Court because no such point was made by counsel. " Every question of law," says counsel, " was decided in the Court below as this Court decides it, and the computation made in the same way." Yet we hear no complaint as to the rate of interest allowed in the computation, either in the Court below or in this Court, until it is made in the petition for rehearing, after a decision against the respon-

dent upon the points raised and discussed. We should not deem it necessary to refer to this point at all, raised as it is, for the first time, at this stage of the proceedings, were it not for the fact that the case goes back for a re-accounting, and the question may be made again on the further proceedings in the Court below. We shall also notice some other matters that we should not have thought it necessary to discuss had there been nothing else in the petition requiring further observation.

This is not a suit by Jordan to "collect" either principal or interest. It is a suit in equity by Hidden against Jordan to establish a contract, and then enforce it. The complaint was filed in November, 1858. It alleges substantially that plaintiff purchased certain tracts of land from third parties; that he borrowed from Jordan four thousand dollars with which to make payment in part; that he agreed to pay interest thereon monthly, at two and a half per cent per month, and if the interest should not be paid to pay interest on each instalment thereof from the time it should fall due, at two per cent per month, and to give his notes therefor; that it was agreed between him and Jordan that the lands purchased should be conveyed by the vendor to Jordan, and that Jordan should hold the title in trust for the plaintiff, and to secure the amount loaned and interest, and upon payment thereof according to the terms of the agreement to convey to plaintiff; that the purchase was made, the money advanced, and the lands conveyed to Jordan in pursuance of this agreement, without the same having been reduced to writing; that afterward the plaintiff caused a contract to be drawn up in writing (a copy of which—Exhibit " B "—is attached to and made a part of the complaint) and presented to defendant for execution; that defendant suggested certain amendments of which he made a memorandum in writing (which is also annexed as Exhibit " C," and made a part of the complaint,) and directed them to be incorporated into the said draft of agreement, and that he approved of and agreed to the terms of the agreement as thus amended; and said defendant then and there agreed to sign,

execute and deliver to said plaintiff the instrument thus completed; that he subsequently refused to execute the agreement as amended, and denied the contract altogether, at the same time claiming that he had purchased the land on his own account. Plaintiff prays that the conveyance to defendant may be adjudged to be a mortgage to secure the payment of said four thousand dollars " in accordance with the agreements contained in Exhibit 'B' and 'C;' " " that said defendant be decreed *to enter into, execute, acknowledge and deliver to plaintiff his agreement in terms as expressed in said exhibit,*" and for general relief. In 1859, a supplemental complaint was filed in which plaintiff alleges, that since the commencement of the action, he has tendered to defendant the full amount due upon said contract for principal and interest, and demanded a conveyance in pursuance of said agreement, and that defendant refused to accept the money, or make the conveyance. He then asks to be permitted to pay the money into Court; that an account may be taken, and the amount due ascertained, and that defendant be decreed to convey in accordance with the terms of said contract. In 1863 plaintiff filed a second supplemental complaint in which he alleges that defendant entered into possession of the premises in 1858, in the manner stated in the original complaint, and that he has been in possession and taken the rents and profits ever since, and in so doing has made himself plaintiff's trustee for the same, and that he is bound to account for the proceeds, etc., and prays, among other things, that defendant be required to account for the same, " and for such other and further relief in addition to that prayed for in this and his former complaints as to the Court may seem just and proper." Upon issues joined, the Court found the contract to be as alleged, including the rate of interest, but found against the tender of the full amount due, and made the accounting upon that basis. Now this is the very contract which plaintiff alleges, and which he asks this Court *to enforce according to its terms.* He sets out the very contract in *hæc verba* drawn up in writing which, he says, was entered into and finally approved, and substantially asks,

firstly, that it be established; secondly, that " defendant be decreed to enter into, execute, acknowledge and deliver to plaintiff his agreement in terms as expressed in said exhibits;" and lastly, after it shall be established and actually executed and delivered, that it be carried into execution by taking an account between the parties and decreeing a conveyance of the land, upon its appearing that the amount due has been paid. He has had the contract set up, established, and the trust arising under it enforced according to the terms alleged, and according to the prayer of the complaint. Can the plaintiff complain that his relief has been meted out to him by the standard which he himself has set up as the measure of his right? We think not. Should the contract in writing in fact be first executed under a decree of the Court, as prayed in the complaint—and on this point, for the purpose of the relief granted, the Court will consider that as done which ought to be done—the question now raised could not arise, for there would then be a contract in writing for interest at the prescribed rate to be enforced. We think upon the case presented by the record that interest should be allowed in the accounting at the rate agreed upon in the contract sought to be enforced, according to its terms. Had this been a suit at law by Jordan upon the parol agreement to recover the money due, the question would have been a very different one.

Another point made in the petition for the first time is the Statute of Limitations. It is sufficient on this point to say, without further discussion, that the record presents no case for the application of the bar of the statute.

In considering the question as to whether the amended and more specific findings of the District Court are in harmony with its general finding upon the state of the account between the parties, we assumed, in our opinion, that the District Judge allowed the item of twelve hundred dollars expended in the construction of a stone wall fence on the premises. It is now, for the first time, very positively asserted, that there was " no allowance made by the Court on account of the stone wall to Jordan." Upon this point there is, on the part of

counsel, a palpable " change of base "—a course of proceedings
too frequent in petitions for rehearing.   In the *brief* filed in
the case, respondent's counsel complained because it *was*
allowed, and on the ground that there was no testimony to
show " that it was necessary to the preservation of the estate
or the crops, and without such proof the Court ought not to
allow anything ;" that " a trustee has no right to put improve-
ments upon an estate, unless they are necessary to its preser-
vation or to save the crops ;" that the stone wall was an
evident attempt to " improve the plaintiff out of the property."
He also complained that, according to the evidence, the esti-
mate adopted by the Court of the length of the wall was too
great, and the price too high, and then adds :  " *Yet the Court
allowed one thousand two hundred dollars for the wall—one
hundred and twenty dollars more than the highest value of the
wall—although about eighty rods of it was inside the line, caus-
ing a loss of a strip of land ten to fifteen feet wide,*" etc. ; and
again :  "*The allowance for the stone wall, one thousand two
hundred dollars, and one half of the proceeds for eighteen hun-
dred and fifty-nine, three thousand seven hundred and thirty-one
dollars, making four thousand nine hundred and thirty-one dol-
lars, was a clear gift to the defendant, to which he was not
entitled.*"   When counsel make in their printed arguments a
formal admission of a fact, or a principle of law which bears
against themselves, it cannot be expected that this Court will
be very particular in ascertaining whether the admission is cor-
rect or not, and counsel, upon reflection, cannot well fail to
perceive that to make such an admission, and then, after the
Court has acted upon it as correct, without offering any sort
of excuse for such action, apply for rehearing upon the ground
that the decision is based upon an erroneous hypothesis, is—
whether intended or not—but trifling with the Court.   In this
case, although the finding does not state in express terms that
the item for the wall was allowed, yet we think the plain
inference from the record is, that it was ; and we cannot sup-
pose that respondent's counsel would have made such stren-
uous efforts in his briefs to show that it was improperly allowed,

or if not, that it was allowed at too great a sum, unless it had been understood by all parties that *it was in fact allowed.* It is still insisted in the petition, that, if allowed, it was erroneously done, for the reason, that there is no finding, and no evidence in the record to support such a finding, that the wall was necessary for the protection of the crops. There is no express finding on that point one way or the other, and, as there is no exception for defect in that particular, the item having been allowed, the presumption is, under the statute of 1861, in favor of its correct allowance; and as no point is specified in the statement as to the sufficiency of the evidence to sustain a finding that the wall was necessary, we could not expect to find any evidence on the point in a statement properly prepared. The statute expressly forbids its introduction. These very principles were invoked by respondent upon other points made against him in this case, and enforced in his favor in our former opinion. Respondent certainly cannot expect us to apply one rule to his points, and another to the appellant's. We have admitted that, in view of the former action of the Court, we may have done the respondent injustice by applying to the statement the rule announced in this case, as to the sufficiency of the evidence to sustain certain findings, and, for this reason, we lay the sufficiency of the evidence out of the case, and it will be unnecessary to discuss it further. Our former opinion will also be modified by omitting that portion relating to the sufficiency of the evidence to sustain the findings.

This brings us to the question, whether the amended and specific findings are in harmony with the original and more general finding—the point upon which the decision was mainly rested before. Upon this branch of the case but one or two points besides those already noticed are made in the petition. It is claimed that, because a balance of twelve hundred and fifty-eight dollars and eighty-six cents interest was found to be due January 4th, 1859, in striking this balance, the Court must have included the item of ninety-six dollars and thirty-nine cents, taxes paid prior to that date, viz: November 1st,

1858.  But we do not so understand the record.  This tax was evidently regarded as an independent item, as no reference is made to any other item or payment allowed prior to that date.  The finding simply gives us the balance of interest unpaid then ascertained, without any reference to the preceding state of the account.  And this item of taxes is included in the finding with the several other items of taxes allowed, which were paid subsequent to the striking of the balance, in the gross sum of six hundred and five dollars and sixty-four cents, and it is only by reference to the admitted facts upon which the finding is based, that we ascertain the dates at which the several items of taxes which make up the gross amount were paid.  We have no doubt, from the record, that this item was allowed to defendant' in the computation, in addition to the balance of interest.  Taxes paid are a part of the expenses of the year in which they are paid.  To ascertain the net profits of the year, the taxes paid are properly deducted from the gross proceeds.  This is simply what was done in our computation.  For the purpose of the computation, we took the month of November, because that appeared to be the end of the year—the period ordinarily adopted for making rests in such cases—and the 4th, instead of the 1st, for the convenience of round numbers, this being sufficiently accurate for the purpose of our argument.  But, taking October 1st—the precise time for making the rests adopted by respondent in his computation—and allowing interest at the agreed rate, it is not pretended, as we understand counsel, that the special findings can be made to harmonize with the general finding, or that upon the special findings the whole amount due has been paid by the rents and profits, unless we throw out of the account the first item of taxes and the item of one thousand two hundred dollars allowed for the wall.  But these items, as we have shown, cannot be disregarded upon the case as now presented by the record.  We cannot, of course, tell how the case may appear after the new accounting.  But even if the one thousand two hundred dollars allowed for the wall be rejected, and the 1st of October taken as the time for making

the rests, there would still be a balance due defendant, if we are not mistaken in our computation. We do not understand that the accuracy of our computation is questioned, provided the first item of taxes be allowed, and deducted from the gross proceeds of the year, and the agreed rate of interest be adopted.

The specific findings must control; and, after a thorough examination of the case, we do not see how those findings can be made to support the judgment. The respondent's counsel insists, with no little warmth, that his client has been grievously wronged, and that a large balance ought in fact to have been found in his favor, but much that is said is based upon matter outside the record. If he is correct, upon a re-accounting he will doubtless be able to show it, and to recover the large balance due him. At all events, we are unable to find anything in the record, or the argument based on it, that would justify a rehearing.

Rehearing denied.

Mr. Justice CURREY expressed no opinion.