## FIRST NATIONAL BANK OF PIERRE V. COMFORT.

1. FRAUDULENT CONVEYANCE—MORTGAGOR IN CHATTEL MORTGAGE IN POSSESSION.

    Under the laws of Dakota (Civil Code, §§ 2023, 2024) the execution of a chattel mortgage, upon a secret parol trust between the parties thereto, without any change in the actual possession of the mortgaged property; is in law fraudulent and void, as against creditors of the mortgagor.

2. SAME—SECRET RESERVATIONS.

    Any secret reservation in trust for the grantor, not apparent on the face of the papers, but resting wholly in parol, renders the whole transaction void, as against creditors injured thereby.

3. TRIAL—DIRECTING SPECIAL VERDICT.

    Where there is some evidence tending to a certain conclusion, but insufficient, from the nature of the controversy, to support a general verdict, it is competent for the trial judge to direct such a verdict as he deems proper.

4. APPEAL—WHEN TAKEN—NEW TRIAL—APPEAL.

    Under Subdivision 2, § 22, Code Civ. Proc. Dak., an appeal will lie, if at all, in the first instance, and before moving for new trial.
    FRANCIS, J., dissenting.

Filed May 25, 1886.

Appeal from the district court of Hughes county.

The facts necessary to an understanding of the points decided are stated in the opinion.

*Walter C. Fawcett,* for plaintiff and appellant.

We do not say but that the evidence taken as a whole strongly tends to prove that there was a tacit understanding in regard to a reserved power of sale of the goods in the mortgagor, but the evidence on this point we think is not of such a character as to justify the action of the court in withdrawing the question from the jury.

We claim however, that under the laws of Dakota a chattel mortgage of merchandise which reserves the power of sale and disposition in the ordinary course of trade is not fraudulent *per se,* but that in the case of such a mortgage it is for the jury to determine from all the circumstances of the case whether the intent of the parties was *bona fide* or not. Secs. 2024, 2026,

Civil Code; Brett v. Carter, 2 Lowell, 458; Oliver v. Eaton, 7 Mich. 108; Guy v. Bidwell, 7 Mich. 509; Morris v. Stern, 80 Ind. 227; Fromm v. Jones, 13 Ia. 174; Wilhime v. Leonard, 13 Ia. 330; Smith v. McLean, 25 Ia. 322; Torbert v. Hayden, 11 Ia. 35; Adler v. Chaflin, 17 Ia. 89; Kuhn v. Graves, 9 Ia. 303; Campbell v. Leonard, 11 Ia. 489; Clark v. Hymen, 55 Ia. 14; Hughes v. Cory, 20 Ia. 399; Frankhauser v. Elliott, 22 Kan. 127.

According to the Massachusetts authorities, such a mortgage is a badge of fraud; but the intention of the parties may always be shown to repel the presumption of fraud, and the question of good or bad faith must always be submitted to the jury.

Jones v. Huggeford, 3 Met. 515; Briggs v. Parkman, 2 Met. 258; Barnard v. Eaton, 2 Cush. 294; Cobb v. Farr, 16 Gray, 597; Rowley v. Rice, 11 Met. 333; Fletcher v. Powers, 131 Mass. 330.

*H. R. Horner*, and *Bartlett Tripp, of counsel*, for respondent.

No motion for a new trial having been made, the insufficiency of the evidence to support a verdict cannot be urged. Hayne New Trials, 396; Clark v. Gridley, 49 Cal. 108; Bettes v. Townsend, 7 Cal. 398.

If a verdict would be set aside as contrary to evidence, the court is not bound to submit the case to the jury, but should direct them what verdict to find. Herbert v. Butler, 97 U. S. 319; Com'rs v. Clark, 84 Id. 278, 284; Pleasants v. Fant, 22 Wall. 116; Improvement Co. v. Munson, 14 Wall. 448; Jewell v. Parr, 13 C. B. 916; 76 E. C. L. R.; Toomley v. Railway Co. 3 C. B. (N. S.) 146; 91 E. C. L. R.; Vanderford v. Foster, 2 Pac. R. 730; Ringgold v. Haven, 1 Cal. 108.

In this case there is no real conflict in the testimony upon the question of change of possession and the main, substantial facts are clearly established. Vance v. Boynton, 8 Cal. 554.

The transfer of possession which is essential to constitute a hypothecation of personal property a pledge as between the parties, is entirely inadequate to give validity to the transaction as against the debtor's creditors. As against creditors the hypothecation must be accompanied by "an immediate delivery

and followed by an actual and continued change of possession,"
(Civil Code 1757, 1758, 2024.)    The transmutation of possession
must be "real, actual and open, and such as may be publicly
known."    Waller v. Crale, 8 B. Mour. 11; Lm. L. Cas. 51-2;
Wardell v. Smith, 1 Camp. 332; Vance v. Boynton, 8 Cal. 554;
Stewart v. Scannell, 8 Id. 81; Fitzgerald v. Gorham, 4 Id. 289;
Bacon v. Scannell, 13 Id. 272.    These were cases of sales, but
the principle is alike applicable to pledges.    Waldie v. Doll,
29 Cal. 556, 559; Goldstein v. Hort, 30 Id. 372.    "Whether the
circumstances existing in a particular case constitute the im-
mediate delivery and the actual and continued charge of pos-
session required by the statute is solely a question of law.
When the facts are conceded or clearly proved there is nothing
for the jury to determine.

Such a transaction would constitute an assignment, with a
preferred creditor, and is invalid.    Civil Code, § 2027, *et seq.*;
Martin v. Hausman, 14 Fed. Rep. 160; Dahlman v. Jacobs, 15
Id. 863; Kellog v. Richardson, 19 Id. 70; Clapp v. Ditman, 21
Id. 15; Perry v. Corby, 21 Id. 737; Goodrick v. Downs, 6 Hill,
438; Barney v. Griffin, 2 N. Y. 365, 370; Knapp v. McGowan,
63 N. Y. 96 N. Y. 75, 85; Robinson v. Elliott, 22 Wall. 513;
Wells v. Langbein, 20 Fed. R. 183; Crooks v. Stewart, 7 Fed.
R. 801; Blakeslee v. Rossman, 43 Wis. 116; Anderson v. Pat
terson, 25 N. W. R. (Wis.) 541; Southard v. Benner, 72 N.
Y. 424.

The bill of sale is likewise void, since the plaintiff thereby
falsely held itself out to the other creditors of the grantors as
owner, when in fact it was only a mortgagee.    Freeman v.
Rawson, 5 Ohio St. 1, 8; Coburn v. Pickering, 3 N. H. 415;
Cheney v. Palmer, 6 Cal. 119, 122; Smith v. Henry, 1 Hill,
(S. C.) 16, 1 Sm. L. Cas. 63.

L. K. CHURCH, J.    This action was brought to recover
damages for the alleged conversion of certain personal prop-
erty claimed by the plaintiff, and which the defendant, as
sheriff of Hughes county, seized under sundry warrants of at-
tachment against the property of MacMahon & Co.    The firm
of MacMahon & Co., doing business at Pierre, consisted of

John MacMahon and Kate MacMahon, his wife; and the firm of Young, MacMahon & Co., of Blunt, and Gotlieb, MacMahon & Co., of Fort Pierre, were branch establishments of MacMahon & Co. On the tenth day of July, 1883, MacMahon & Co., then being financially embarrassed, and threatened by creditors with legal proceedings, mortgaged to W. G. Nixon, cashier of the plaintiff, all goods, wares, and merchandise in their store in Pierre; all goods stored in their warehouse or shed in the rear of said store; and all other goods belonging to said firm, wherever situated, in the city of Pierre; also one horse and delivery wagon and carriage, together with ponies belonging to said firm; all sheds, warehouses, etc., of the firm in the rear of said store; all notes, claims, and evidences of indebtedness of any kind whatever, due to said firm; and all interest of said firm in the business of Young, MacMahon & Co., and Gotlieb, MacMahon & Co.,—to secure the payment of $6,000., with interest thereon, according to the terms of four promissory notes, as follows: One for $1,000, payable August 1, 1883; one for $3,500, payable September 1, 1883; and one for $1,000, payable October 1, 1883. The mortgage provided that in case of the mortgagor's attempting to dispose of or remove from the county of Hughes the goods and chattels, or any part thereof, or in case the mortgagee should at any time deem himself insecure, then it should be lawful for him to take possession, and sell at public auction. It was agreed, however, outside of the mortgage, that the mortgagor's should continue business as before, disposing of the mortgaged property by retail, at private sale, in the usual course of trade. On the following day the mortgagors gave to Nixon a bill of sale of the same property, and included, in addition, all goods then in transit, or should thereafter be in transit, or in way come into their possession; also all goods in transit, or thereafter to be in transit, to Young, MacMahon & Co., or Gotlieb, MacMahon & Co.; and all the interest of the grantors in any indebtedness which might become due to either of said firms; the intention evidently being to include MacMahon & Co.'s entire property.

It is claimed that this bill of sale was intended as a mere

security, and to cure possible defects in the mortgage. The next day (July 12th) it is claimed that there was a meeting of plaintiff's board of directors upon the subject of the security which had been taken from MacMahon & Co., at which time it was concluded that the security was unsafe; and thereupon, on the same day, plaintiff took MacMahon & Co.'s stock of merchandise under a parol agreement by which after selling by retail at private sale enough goods to satisfy its claim, it was to account to MacMahon & Co. for the surplus.

MacMahon continued in the store; the clerks were to go on and sell the goods in the usual way; nothing was said about reducing prices; no inventory of the goods was taken; MacMahon's sign was not taken down,—in fact, nothing was done in any way to change the outward or inward appearance of the manner of conducting the business, except that Mr. Carlin, as agent for the bank, was quietly put in charge, and he was to remain in charge only until the bank was paid, and then, according to the parol agreement, the bank's interest ceased. The anxiety of the bank people, and their diligence in looking after the interest of the bank, and the acknowledgment that they did not deem the bank sufficiently secured by the chattel mortgage, and the manner and circumstances under which the bill of sale was procured, and all the admitted facts, show they were aware of the failing or embarrassed circumstances of MacMahon & Co. The defendant attached said property on July 13th, and it is admitted said attachment proceedings are regular.

The only error assigned is the action of the court in directing the verdict. We are of the opinion that the entire transaction was an assignment by MacMahon & Co. to the bank; and, whether in name a "mortgage" or "bill of sale," there was no delivery of the property,—there was a secret trust for the benefit of MacMahon & Co. If considered as a mortgage, it was fraudulent and void in law as against creditors. When the mortgagor, by an arrangement, express or implied, is permitted to continue in possession of, and sells, a mortgaged stock of goods, shifting in their nature, at retail, for his own

benefit, the mortgage is unavailing against his creditors. The law will not aid a party to directly or indirectly continue to dispose of his property to a creditor with a secret reservation to himself, not apparent upon the paper, but existing in parol. Civil Code, §§ 2023, 2024; Bump, Fraud. Conv. 192; Porter v. Graves, 104 U. S. 691; Wait, Fraud. Conv. § 238; Cheney v. Palmer, 6 Cal. 119; Jones, Chat. Mortg. § 352; McKibbin v. Martin, 64 Pa. St. 352; Brown v. Webb, 20. Ohio, 389; Lukin v. Aird, 6 Wall. 78. The rule in this territory is that such an arrangement is, as a matter of law, fraudulent and void, as against creditors, and consequently there was no question of fact to submit to the jury. Yet if there was some evidence in favor of the party, if it is insufficient to sustain a verdict, so that one based thereon will be set aside, the court is not bound to submit the case to the jury, but must direct them what verdict to render. Herbert v. Bentley, 97 U. S. 320; Improvement Co. v. Anderson 14 Wall. 442; Pleasant v. Fant, 22 Wall. 116; Ringgold v. Haven, 1 Cal. 108.

The necessity of moving for a new trial in the court below, to obtain a review of the whole case is the remaining question. Section 22, Code, sup. 2, provides the supreme court may review upon appeal every actual determination; among others enumerated, an order which grants or refuses a new trial. Sub. 5 provides an appeal cannot be taken before the final determination of the action in which the order is made; "but upon the final judgment or decision being rendered, the appellant, on his appeal from such final judgment or decision, may have any intermediate order enumerated in this section reviewed by the supreme court, by designating such order sought to be reviewed, in his notice of appeal from the final judgment or decision."

The practice, as indicated by Section 288 of Code, is that a party intending to move for a new trial must, within ten days after the verdict of the jury, if the action was tried by a jury, or after notice of the decision of the court or referee, if the action was tried without a jury, serve upon the adverse party a notice of his intention to move for a new trial, designating the

grounds upon which the motion will be made. The object being to give the opposite party time to prepare for the motion, the notice of intention must be given before the court can entertain the motion for a new trial. The defeated party may appeal from the judgment, and, in connection with such appeal, may appeal from and review the order refusing a new trial. The appeal from the judgment does not depend upon the motion for a new trial. It is undoubtedly the intention of the statute that the question of the insufficiency of the evidence can only be raised by a motion for a new trial. Judgment affirmed.

FRANCIS, J., dissenting; TRIPP, C. J., counsel below, not sitting.