[No. 2,824.]

## DOMINGO PUJOL v. JAMES McKINLAY, CARMEN AMESTI DE McKINLAY, ELENA B. McKINLAY, MARIA F. G. McKINLAY, JOSE G. F. A. McKINLAY, PRUDENCIA G. McKINLAY, AND JANE KRAMPNER.

INTEREST STIPULATED BY CONTRACT ONLY PARTLY EXECUTED.— Where an agreement was made between Pujol and McKinlay that Pujol should advance money to redeem McKinlay's land from an execution sale; that he should be paid interest at the rate of two and a half per cent per month, compounding quarterly on his advances; that after redemption he should advance a further sum sufficient to make the whole advance three thousand dollars, for which sum at the said rate of interest McKinlay was to give his note and mortgage ; and it appeared that after redemption and the taking of a Sheriff's deed by Pujol, he made no tender of the additional sum, nor did McKinlay tender the note and mortgage : *held*, that Pujol was entitled to interest on his advances at the stipulated rate ; that McKinlay could not defeat it on the plea that such was not to be the rate unless the full amount of three thousand dollars was advanced, because Pujol was not in default so long as no tender of the note and mortgage had been made by McKinlay ; and that before McKinlay could ask equity to compel Pujol to transfer the legal title acquired by the Sheriff's deed, he must do equity by paying Pujol his advances with the interest stipulated.

HE WHO SEEKS EQUITY MUST DO EQUITY.—Where parties come into a Court of equity seeking to enforce a trust created in their favor under a

contract, their right to the relief demanded being founded on the contract itself, they cannot claim the benefit of such portions of it as are to their advantage and repudiate the rest.

UNLIQUIDATED DAMAGES NOT PAYMENTS ON ACCRUING INTEREST ACCOUNT.—Where Pujol leased a ranch from McKinlay at a rent of a certain number of calves to be delivered annually; and afterwards advanced money to redeem the ranch from an execution sale under an agreement that he was to be repaid the advance with interest at the rate of two and a half per cent per month compounding quarterly; and no calves were delivered or rent paid : *held*, on a settlement of accounts that McKinlay's claim for non-delivery of the calves was in the nature of unliquidated damages ; and that, though equity in making a settlement might, for the purpose of avoiding a multiplicity of actions, estimate such damages and deduct them from Pujol's demand, it would not compute the interest on his demand with rents—in other words, it would not treat such damages as *pro tanto* a payment of Pujol's demand at the several dates when the calves were to be delivered.

INTEREST BY WAY OF DAMAGES ON VALUE OF PROPERTY CONVERTED. It is well settled that in an action at law for the conversion or non-delivery of personal property agreed to be delivered, interest may be awarded by way of damages for a breach of the contract; and there are even more cogent reasons why equity should adopt the same rule in the settlement of a long standing account.

ACCOUNT FOR RENTS IN EQUITY THOUGH MERGER OF LEASE AT LAW. Where a lessee, having redeemed the property leased from an execution sale and received the Sheriff's deed, recovered in ejectment against the lessor ; but it appeared that as a matter of fact the lessee, in making such redemption, did it in trust for the lessor : *held*, that although at law the lease was merged in the lessee's new title and recovery in ejectment, in equity there was no merger ; and that on a settlement of accounts the lessee was chargeable with rents during the whole time.

APPEAL from the District Court of the Third Judicial District, Monterey County.

This was an action to quiet the plaintiff's alleged title to the Rancho "Moro y Cayucos," in San Luis Obispo County, to set aside a deed thereto made on November 24th, 1857, by James McKinlay to his wife Carmen Amesti de McKinlay, and for general relief. The defendants answered, and among other things set up, by way of cross-complaint, that plaintiff held the possession of said property as a lessee, and also held the legal title, under a Sheriff's deed, by way of

mortgage, or in trust, to secure certain advances made by him; and they prayed for an account of the moneys due him; also, for an account of the rents due them; also, that plaintiff should be enjoined from asserting title against them, or right of possession, except as lessee of an unexpired term, and compelled to convey to them the title acquired under the Sheriff's deed, and for general relief. The action was originally commenced in 1865, in the District Court of the First Judicial District, for San Luis Obispo County, but seems to have been afterwards transferred to the District Court of the Third Judicial District, for Monterey County, where it was tried, and findings filed on September 22d, 1869.

From the findings it appears, among other things, that in 1857 James McKinlay, the owner of the ranch in question, being involved in certain litigation, conveyed to his wife the whole of that part of the ranch known as the "Cayucos," and one half of that part known as the "Moro," in trust, to receive and apply the rents, issues, and profits to her support and maintenance, and to the support, maintenance, and education of the children then born or which might thereafter be born unto them; that this deed was made with intent to hinder, delay, and defraud one Jane Allen in enforcing any judgment which she might recover in an action brought by her and then pending against him, but that neither his wife nor the children knew of any such intent or were privy to it; that Jane Allen afterwards recovered judgment, upon which execution was issued, and all the right, title, and interest of James McKinlay in said ranch was sold thereunder, and a Sheriff's certificate of sale issued to her; that under these circumstances, and while affairs were in this condition, on December 29th, 1859, James and his wife leased the ranch (except three hundred acres of arable land, which,

with the privilege of pasturage on the ranch for two hun-. dred or three hundred head of cattle and horses and their increase, they reserved to themselves) to Domingo Pujol, the plaintiff, for the term of six years from March 1st, 1860, with the privilege of surrendering it at the end of three years—the plaintiff to deliver to them, as rent, two hundred calves (one hundred heifer and one hundred bull calves) annually, and to pay the taxes; that plaintiff entered into possession of the ranch, under the lease, on March 1st, 1860, and stocked it with cattle and horses belonging to the firm of Sanjurgo, Bolado & Pujol; that when the time for redemption from the Allen sale was about expiring, James applied to Pujol for a loan of money to redeem, which the latter at first refused to make, on the ground that James had conveyed to his wife and children, but upon James' assurance that he had made that conveyance for his own ends, plaintiff, on June 19th, 1860, made him a loan of two hundred dollars, to secure the payment of which, with interest thereon, at the rate of two and a half per cent per month, he took a note and mortgage on the ranch, and at the same time, and simultaneously therewith, the two entered into a written agreement to the effect that Pujol was to redeem the ranch from the Allen sale, and after the redemption loan a further sum, which, with the redemption money and money loaned, would make up an amount of three thousand dollars, for which James was to give his note, bearing interest at two and a half per cent per month, compounding every three months, and a mortgage, executed by himself and wife, upon the ranch to secure the same; that the plaintiff did redeem from the Allen sale, and afterwards, on November 14th, 1860, there having been no redemption made from him, the Sheriff executed his deed for the ranch to Pujol, which was duly recorded; that Pujol did not offer to pay to James the additional sum necessary to make up the amount of three thousand dollars contemplated in the agreement,

and the note and mortgage therein provided for, though executed and ready to be delivered on the payment of such additional amount, were never in fact delivered or tendered; that the plaintiff remained in possession of the ranch, but never paid any rent, nor was any rent demanded of him; that in May, 1861, James' indebtedness to the plaintiff, or rather to the firm of Sanjurgo, Bolado & Pujol, was two thousand nine hundred and sixty-five dollars and sixty-five cents for redemption money and money loaned, with interest, and they proposed, upon the payment to them of three thousand dollars and the release of the plaintiff from paying rent for the ranch for a number of years, to reconvey the ranch to him, which proposition he agreed to, but failed to raise the necessary money; that on further negotiation it was agreed that James should give a note, by himself and wife, for three thousand dollars, bearing interest at two and a half per cent per month, and a mortgage on the ranch, by both, to secure it, and receive a reconveyance, and the papers were accordingly prepared, but, when the parties met to execute them, James refused to do so, and the transactions of the parties remained unsettled; that in March, 1862, plaintiff, while still in possession of the ranch, except the portion reserved, commenced an ejectment suit in San Luis Obispo County, against James, to recover possession of the ranch and damages, and about the same time, but after James was served in that suit, plaintiff wrote to him to go to Monterey, where he would meet Bolado, his partner, who was authorized to make a settlement of the matter in dispute; that James proceeded to Monterey and found Bolado, and various negotiations took place, which resulted in no definite settlement; that while James was absent, engaged in the negotiations pending, a default was taken in the ejectment suit, a judgment entered against him, a writ of restitution issued, and a return made by the Sheriff of its execution "by dispossessing the defendant James and delivering

peaceable possession to the plaintiff;" that the ranch continued to be assessed to James, and he paid the taxes; that in October, 1864, James being in possession of the portion of the ranch reserved in the lease, the plaintiff commenced an action of forcible entry and unlawful detainer against him, in which he recovered judgment, and on June 16th, 1865, a writ of restitution, issued thereon, was executed by the Sheriff " by causing the plaintiff to have possession of the premises described in the writ;" and that the next day the plaintiff commenced the present suit.

As conclusions of law, the Court below found that the deed of trust to Carmen Amesti De McKinlay was delivered before the plaintiff had acquired any title to the ranch, and that it vested title in her as against all persons, but creditors of her husband, subject to any liens upon it against him, and to the right of his creditors to attack it as fraudulent; that plaintiff was not a creditor at the time of its execution, and therefore not in a position to attack it as fraudulent; that on the redemption from the Allen sale plaintiff became subrogated to the position of Jane Allen, but subject to the relation between him and the defendants created by the agreement under which he became such redemptioner; that by virtue of the lease, entry, and possession under it, there having never been any surrender, plaintiff was estopped from denying Mrs. McKinlay's title; that the redemption from the Allen sale was for the benefit of the defendants, and the deed obtained from the Sheriff in the ejectment case vested title in the plaintiff only in trust, until the debt for three thousand dollars should be secured by note and mortgage; that defendants were not in default for not tendering the note and mortgage, for the reason that plaintiff did not tender the sum necessary to make up the amount of three thousand dollars, as contemplated by the agreement; that the relations of debtor and creditor still existed; that the judgment in the ejectment suit not being

fraudulent, nor anything having been done to prevent the
defendant therein from putting in an answer and defending
the case, was conclusion of title in fee as against James, and
as to him merged the term of the lease to plaintiff, but
did not affect the rights of Mrs. McKinlay or her children;
that consequently plaintiff was not entitled to the relief
demanded; that defendants, on their cross-complaint, were
entitled to an account of the rents of the ranch from the
date of the lease, and also to an account showing the mon-
eys advanced by plaintiff for redemption, loans, and taxes,
and the interest thereon; that upon payment of the amount
found due the plaintiff on such accounting, defendants would
be entitled to a reconveyance, and that the matter should be
referred to the Court Commissioner to state the accounts.

The Court Commissioner, in stating the accounts, found
that the amount advanced by the plaintiff for redemption
was two thousand and forty-six dollars, the amount loaned
two hundred dollars, and the amount paid for taxes nine
hundred and sixty-four dollars and sixty-five cents; that
plaintiff was entitled to interest on these advances at the
rate of two and a half per cent per month, compounding
quarterly, amounting in all to thirty-five thousand five hun-
dred and forty-four dollars and forty-eight cents; that the
defendants were entitled to credit for the value of the calves
reserved as rent as the same became due, with legal interest
thereon, amounting to two thousand and eighty-four dollars
and seventeen cents, to James McKinlay, up to the judg-
ment in ejectment, and seven thousand three hundred and
twenty-four dollars and seventy cents to Mrs. McKinlay up
to date, leaving the amount due the plaintiff twenty-six
thousand one hundred and thirty-five dollars and sixty-one
cents.

Exceptions being taken to the accounts as stated by the
Commissioner, new accounts were filed, which reduced the
amount of plaintiff's demand to thirty-four thousand eight

hundred and forty-five dollars and eighty-four cents; struck out interest on the value of the calves, and thereby reduced the credits in favor of defendants to eight thousand one hundred and forty-three dollars and seventy-five cents, leaving the amount due the plaintiff twenty-six thousand seven hundred and two dollars and nine cents.

Upon the findings of the Court, the report of the Commissioner, and the last accounts filed, final judgment was entered in accordance therewith, and further providing that upon the payment to the plaintiff of the amount so found due him within one hundred and twenty days, he should reconvey said ranch to defendants as they held it before; and that in default of such payment the cross-complaint should be dismissed and defendants barred and foreclosed of all equity of redemption in the ranch.

The plaintiff moved for a new trial, which was denied; and he then took an appeal from the judgment and order. In the meanwhile the defendants also took an appeal from the judgment, and urged as objections the points discussed in the opinion. Both appeals were heard together.

*William J. Graves, Walter Murray,* and *Edward Pringle,* for Plaintiff, Appellant, and Respondent.

*S. Heydenfeldt, D. S. Gregory,* and *P. K. Woodside,* for Defendants, Appellants, and Respondents.

By the Court, Crockett, J.:

In this case there were cross-appeals, and so much of the judgment as the plaintiff appealed from was affirmed from the bench. The defendant's appeal relates only to the accounting which was had under the order of the Court, and the errors alleged are: First, that the Court computed interest at the rate of two and one half per cent per month, compounded quarterly and without rests, upon the amount ad-

vanced by the plaintiff to effect the redemption from Allen, and upon the sums paid by the plaintiff for taxes on the land; second, that the Court refused to allow to the defendant interest on the value of the calves, which were to be paid annually by the plaintiff as rent for the land under lease; third, that the Court erred in refusing to charge the plaintiff with the value of James McKinlay's one quarter interest in the calves, after the date of the judgment in ejectment in favor of the plaintiff against McKinlay.

In considering the first point, it is to be observed that, by the contract of the 19th of June, 1860, McKinlay stipulated that the plaintiff should be paid interest on his advances at the rate of two and one half per cent per month, compounded quarterly, and the only reason now urged against this rate of interest is, that under the contract the plaintiff was to advance a further sum, which, when added to the other advances, would aggregate the sum of three thousand dollars, and it is said that inasmuch as the last named advance was never made by the plaintiff, the contingency did not happen upon which McKinlay agreed to pay so high a rate of interest; hence it is claimed that the plaintiff is entitled only to legal interest on the sums actually advanced. But under the contract of June nineteenth, the undertaking of the plaintiff to make the last advance, and of McKinlay, that he and his wife would make and deliver their promissory note and mortgage to secure the three thousand dollars, were mutual and dependent covenants; they were concurrent acts, to be performed at the same time, and neither of the parties could put the other in default, except by an offer to perform on his part; and McKinlay having failed to tender the note and mortgage, on or before September 3d, 1860, the plaintiff was in no default in omitting to tender the additional advance before that period, and on that day he became entitled, under the contract, to the Sheriff's deed for the property. Assuming that he held the legal title thus

acquired, subject to a trust created under the contract of June nineteenth, in favor of McKinlay and wife, nevertheless when they come into a Court of equity, seeking to enforce the trust, their right to the relief demanded is founded on the contract itself, and they cannot claim the benefit of such portions of it as are to their advantage, and repudiate the rest.    The plaintiff, as we have seen, was in no default until after he had obtained the Sheriff's deed, and the defendants are not entitled to divest him of the legal title, except on payment of his advances, with the stipulated rate of interest.    The maxim, that he who seeks equity must do equity, applies to the defendants' case.   In *Hidden* v. *Jordan*, 28 Cal. 313, the plaintiff sought to enforce a parol trust, similar to that in this case; and it was held that he could enforce the trust only by the payment of the stipulated sum, with the agreed rate of interest, which was largely in excess of the legal rate when none was agreed upon.    I think that case is decisive of the point now under discussion, and that the Court did not err in computing interest at the stipulated rate.    Nor did the Court err in refusing to deduct the value of the calves from the plaintiff's demand, as of the several dates at which they were to be delivered under the lease. The defendants' demand for the non-delivery of the calves was in the nature of unliquidated damages, the amount of which could not be ascertained until the accounting was had.    Neither at common law, nor under our statute, could unliquidated damages of this nature be the subject of a set-off or counterclaim in an action at law for a liquidated money demand, not connected with or growing out of the same transaction in which the alleged set-off, or counterclaim, originated; and though a Court of equity, in making a final settlement of the accounts between the parties, in order to avoid a multiplicity of actions, will estimate the damages and deduct them from the plaintiff's demand, with a view to end the litigation, it will not, in such cases, com-

pute the interest on the plaintiff's demand with rests. The calves can in no just legal sense be regarded as a payment *pro tanto* of the plaintiff's demand, as of the several dates when they were to be delivered under the lease. The defendants, at most, had only a cause of action against the plaintiff for the value of the calves, which was unascertained and sounded in damages. A cause of action of this nature could not stop the running of interest on the plaintiff's demand until the final accounting, and the value of the calves was ascertained. But I think the Court erred in refusing to compute interest at the legal rate on the value of the calves from the respective dates at which they ought to have been delivered. It is well settled that in an action at law for the conversion or non-delivery of personal property, the Court or jury may award interest by way of damages for a breach of the contract; and there are even more cogent reasons why a Court of equity should adopt the same rule, in the settlement of a long standing account between the parties, as in this case. The plaintiff has had the use of the calves, or their value, for many years, and there is no reason, founded either in law or justice, why he should not be chargeable with interest on their value. In respect to the third point, the Court below proceeded on the theory that James McKinlay's interest in the lease became merged in and terminated by the judgment in ejectment, and consequently, that said McKinlay's interest in the rent, under the lease, was thenceforth extinguished. This was undoubtedly true in respect to McKinlay's. *legal* title to the rents. If McKinlay had brought an action at law to recover the rents, the judgment in ejectment would have been a sufficient answer to it. He would have been estopped thereby from asserting title, in an action at law, to the land or its rents. But he was not bound to set up his equitable defense in that

CAL. REPS. XLII—72

action; and now that he has appealed to a Court of equity, it appears for the first time that the legal title acquired by the plaintiff, under the Sheriff's deed, and which was the foundation of the judgment in ejectment, was and is held by him, subject to the equities created by the contract of June nineteenth; and consequently the judgment in ejectment did not have the effect in a Court of equity to merge or extinguish McKinlay's interest in the lease, or the rents reserved thereby. I am therefore of opinion that the Court erred in refusing to deduct from the plaintiff's demand the amount due to James McKinlay for his portion of the rents, during the whole term of the lease, with interest thereon.

That portion of the judgment from which the defendants appealed is therefore reversed, and the cause remanded, with an order to the Court below to modify its judgment in accordance with this opinion.

Mr. Chief Justice SPRAGUE and Mr. Justice WALLACE, the latter being disqualified, did not participate in the foregoing decision.