Points decided.

[No. 2,344.]

DAVID MAHONEY AND SOLOMON A. SHARP v. JOHN MIDDLETON, PATRICK HIGGINS, HERMAN WOHLER, DANL. C. BREED, ALFRED BOREL, —— RODGERS, JOHN HIGGINS, EXECUTOR OF DANIEL N. BREED, DECEASED, WM. HENRY GREEN, LEWIS WELSCH, PETER DONAHUE, JOHN LEMMON, SAMUEL P. MIDDLETON, L. L. ROBINSON, AND EDWARD SWEENEY.

| | |
|---|---|
| 41 | 41 |
| 89 | 73 |
| 41 | 41 |
| 101 | 603 |
| 41 | 41 |
| 118 | 472 |
| 41 | 41 |
| 119 | 64 |

PRIORITY OF CONVEYANCES AND OF RECORDING DEEDS.—A conveyance to one who has notice of a prior unrecorded deed, given by his grantor to a third person, passes no title to the grantee, and an innocent purchaser from such grantee does not acquire any title, except through the Registry Act, in getting his deed recorded before the record of such prior deed.

PURCHASER WITH CONSTRUCTIVE NOTICE.—A purchaser from one who bought with notice of a prior unrecorded deed, given by his grantor to a third person, has constructive notice of such prior deed, if it is recorded before the execution of his conveyance, and he is not a purchaser in good faith, although the deed to his grantor may have been recorded before the record of such prior deed. In such case the prior deed will take precedence.

PRESUMPTION THAT SUMMONS WAS SERVED.—When the judgment roll which is offered in evidence is silent as to the issuing and service of process, it will be presumed that process was issued, and served on the defendants, and the judgment is not void.

RECORD NEED NOT SHOW SERVICE OF SUMMONS.—The fact alone, that the judgment roll does not show that summons was served on the defendants, does not sustain a finding of the Court that there was no service of summons. The fact that the judgment roll does not show that summons was served does not tend to sustain such finding.

APPEARANCE OF DEFENDANT BY ATTORNEY.—The appearance of a defendant by an attorney gives the Court jurisdiction over such defendant.

MORTGAGE BY TENANT IN COMMON.—If a party who owns an undivided one seventh of a tract of land, as a tenant in common with others, is in possession of a portion of the tract, and mortgages all such portion, describing it by metes and bounds in the mortgage, and the mortgage is foreclosed, the purchaser at the mortgage sale acquires the title to only an undivided one seventh of the portion thus mortgaged.

EJECTMENT AGAINST TENANT IN COMMON.—In ejectment by one tenant in common against another who is in possession of a portion of the demanded premises described by metes and bounds, the defendant cannot resist a

recovery as to the portion he thus possesses, on the ground that in equity his interest in all the demanded premises should be set off so as to include the portion which he thus occupies.

DEED BY TENANT IN COMMON.—If a party purchases from one who owns one undivided one seventh of a tract of land, a portion of such tract described by metes and bounds, he acquires the title to only one undivided one seventh of the portion he has purchased.

EFFECT OF JUDGMENT IN EJECTMENT.—A judgment in ejectment does not transfer to the prevailing party the title of the adverse party; but it awards to the successful party the possession, because the opposite party had no title to the land in controversy, and estops him, and those claiming under him, from setting up or offering proof of title to the land recovered, as against the successful party, or his privies in estate.

CONVEYANCE AFTER RECOVERY IN EJECTMENT.—If a party, who owns an undivided one seventh in a tract of land, recovers a judgment in ejectment for such one seventh, against a tenant in common, and afterwards sells his interest in the tract, his conveyance passes to his grantee only the undivided one seventh which he owned before the commencement of the action.

WHEN EJECTMENT LIES.—Ejectment cannot be maintained against one who is not in possession of the demanded premises when the action is commenced.

FINDING INTEREST OF PLAINTIFF IN EJECTMENT.—The plaintiff in ejectment, who owns an undivided interest in the demanded premises, is entitled to recover upon a finding of the fact that he holds an interest in common with others in the premises; but it is not error for the Court to find the extent of his interest, and it is proper that it should do so.

IDEM.—When the plaintiff in ejectment, between tenants in common, has made conveyances of parcels of the demanded premises, the Court should, in finding his interest, deduct the parcels thus conveyed.

JUDGMENT IN EJECTMENT.—It is error to recite in a judgment in ejectment between tenants in common, that the plaintiff has owned the premises recovered for a longer period than the proofs warrant.

IDEM.—If the proofs in ejectment show that the plaintiff was, at the commencement of the action, in possession of a portion of the demanded premises, he should not recover judgment for this portion.

FORM OF JUDGMENT IN EJECTMENT.—In ejectment against a number of persons who are severally in possession of different parcels of the demanded premises, when no damages or mesne profits are claimed, the recovery against each defendant should be confined to the parcel in his possession.

NOTICE OF PRIOR DEED.—When a purchase of land is negotiated and made through an agent, notice to the agent of a prior unrecorded deed, made by the grantor, is notice to the principal.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

Francisco de Haro died intestate on or about the 1st day of January, 1849, leaving him surviving the following heirs at law, viz:

1. Josefa de Haro, who intermarried with James G. Denniston;

2. Rosalia de Haro, who intermarried with Charles Brown;

3. Prudencio de Haro, a male;

4. Carlotta de Haro, who intermarried with Isaac V. Denniston;

5. Candelaria de Haro, who intermarried with Juan Pruzzo;

6. Natividad de Haro, who intermarried with Paul Tissot;

7. Alonzo de Haro.

The Rancho Laguna de la Merced contained one half a square league of land. Natividad and Paul Tissot, her husband, on the 4th day of March, 1857, mortgaged to Ramon Briones and his wife one undivided one seventh of the rancho, and on the 28th day of October, 1857, a complaint was filed in the Twelfth District Court, in an action to foreclose the mortgage.

On the 7th day of November, 1857, judgment was rendered in the action. On the 22d day of February, 1855, John Middleton was in the possession of a portion of the land contained within the exterior boundaries of said rancho, containing six hundred and forty acres, and called the "Lake House tract," but had no title thereto; and on the same day conveyed it to Michael Reese. April 3d, 1855, said Reese conveyed the same to Charles Brown, the husband of Rosalia. Reese had no title, but Brown entered into possession of the "Lake House tract." The conveyances of this tract described it by metes and bounds. On the third day of April, the same year, Brown and Rosalia, his wife, executed to said Reese a mortgage on the "Lake House tract," in which the property was described as in said deeds, which mortgage was assigned to Joseph C.

Palmer in trust for Middleton's wife, who brought suit in said Court to foreclose the mortgage, on the 15th day of February, 1856. On the fifteenth day of March following both defendants answered by their attorney, and judgment of foreclosure was entered May 25th, 1857. The property was sold by the Sheriff to F. M. Haight, and he received a Sheriff's deed on the 11th day of May, 1858. In the complaint and Sheriff's deed the property was described as in the mortgage. Haight, on the 29th of December, 1858, quitclaimed the same land to said Middleton, who, on the 26th day of May, 1860, conveyed to Daniel Green a portion of the same, described by metes and bounds, and Middleton and his son Samuel, on the 26th day of January, 1861, conveyed one undivided one half of the "Lake House tract" to Levi Parsons, which interest, by mesne conveyances, afterwards became vested in the plaintiff Mahoney. Before the commencement of this action, plaintiff Mahoney conveyed to plaintiff Sharp an undivided interest in the rancho equal to two hundred acres. The Court found that the plaintiff, Mahoney, was the owner in fee at the commencement of the action of four hundred and thirty five hundred and sixtieths ($\frac{435}{560}$) of the rancho, and gave judgment that the plaintiffs recover possession of the same. The plaintiffs did not ask a judgment for damages or mesne profits. The defendants were separately in possession of several parcels of the rancho, but the judgment was against the defendants jointly for the interest recovered by the plaintiffs. The interest which the Court found Mahoney owned included the land which he had conveyed to Bergin and others. The defendants appealed. After the judgment was rendered in the Supreme Court, the plaintiff filed the release spoken of in the opinion.

The other facts are stated in the opinion.

*Wilson & Crittenden*, for Appellants.

Wohler was not bound to take notice of every paper which was recorded, but only of *those in the chain of title down to his immediate grantor*. The state of the record at the moment of the recording of his grantor's deed, determined the right in respect to himself. All that was required of him by the law, was to examine the title to that time, and when he found a good conveyance to his grantor, he was under no obligation to look further, not even as said in one of the cases, to look at the records of the next day. (2 Hilliard on Real Property, 457; *State of Connecticut* v. *Bradish*, 14 Mass. 296; *Trull* v. *Bigelow*, 16 Mass. 419; *Hooker* v. *Pierce*, 2 Hill, N. Y. 650.)

If this be not the law then it would follow that every purchaser is chargeable with notice of every instrument upon record, down to the time he records his own deed, if it relates to *the land*, though it is outside of *the title* and wholly unconnected with it.

Had the law even imposed on Wohler the obligation to search the records down to the day of the date, and recording of his own deed, and charged him with notice of everything then appearing of record, he would have been a purchaser in good faith.

At that time, the record, it is true, disclosed the fact that Mahoney claimed under a deed from Prudencio, dated June 14th, 1860, but it also disclosed that the deed was void as against Pichoir, whose deed from the same grantor was subsequent in date, but was first recorded.

Wohler had then a right to assume, for the law authorized him to do so, that Pichoir had *not* at the time of purchasing and the time of recording his deed from Prudencio any notice or knowledge of the prior deed to Mahoney, and was a purchaser in good faith, and, therefore, as against Mahoney and all other persons claiming under him, had the better

title to the land.   If he could not so assume and with safety purchase from Pichoir upon that assumption, but on the contrary, should be held to have been put, by the subsequent recording of the deed to Mahoney, upon inquiry as to the facts of good faith and actual notice, Pichoir would lose the benefit of that protection which the law was intended to afford him, and the whole policy of the law would be defeated.

The effect of Haight's purchase at the Sheriff's sale was to place him in the position in which he would have stood had he acquired title under a voluntary deed by Brown and wife.

And the question is, simply, what right does one acquire under a conveyance of a designated and described piece of land, parcel of a larger tract, when the conveyance is made by one only of seven, who, as tenants in common, with equal interests, are owners of the whole?

Does he take merely the undivided one seventh of the piece of land described in his deed?

The Court so decides in the present case, for by its judgment it gives to the plaintiff Mahoney the whole one seventh interest of Rosalia in the Rancho Laguna de la Merced, less the undivided one fourteenth of that interest in the "Lake House tract," and it assigns that undivided one fourteenth only to the defendant Middleton.

Or does he take the land conveyed to him subject to the contingency of its being afterwards, upon partition, assigned to him as the share of his grantor; and with the right, until partition, to the use and possession of the land conveyed to him, as a co-tenant with the other tenants in common of his grantor?

We submit that this latter is the correct statement of the nature and quality of the right acquired by such a purchaser.   (*Stark* v. *Barrett*, 15 Cal. 368–371; *Gates* v. *Salmon*,

35 Cal. 576.) And if so, the Court erred in its conclusion upon this point.

However the judgment of Le Roy against Green might operate as between themselves and by way of estoppel, it certainly did not have the effect of a conveyance from Green to Le Roy; and in the present action, and as against Middleton, could not show, nor tend to show, any transfer of title from Green to Le Roy; and if it had not that effect the deed from Le Roy to Mahoney was irrelevant.

Ejectment is a possessory action, and must be brought against the occupant. It determines no rights but those of possession at the time, and it matters not who has, or claims to have, the title of the premises. If there is a tenant in possession the tenant is the proper party. (*Dutton* v. *Warschauer*, 21 Cal. 609; *Fogarty* v. *Sparks*, 22 Cal. 148; *Owen* v. *Fowler*, 24 Cal. 192; *Hawkins* v. *Reichart*, 28 Cal. 534; *Dimick* v. *Derringer*, 32 Cal. 488.)

*Caperton* v. *Schmidt*, 26 Cal. 490, and *Marshall* v. *Shafter*, 32 Cal. 176, only determined that a judgment was as conclusive in an action of ejectment as in any other actions, in respect to what was at issue and tried, and would be an estoppel as between the parties. But this does not touch the question of parties, nor alter the rule upon that subject. There is a manifest absurdity in maintaining an action for possession against one who is not in possession.

*W. H. Patterson*, for Respondents.

Section twenty-six of the Statute of Conveyances does not make the unrecorded deed void. It passed the title without record. It is void only as against a subsequent purchaser in good faith, and for a valuable consideration, whose conveyance is first duly recorded. (*Jackson* v. *Bogott*, 10 Johns. 457, 466; *Jackson* v. *Phillips*, 9 Cow. 94; *Van Rensselaer* v. *Clark*, 17 Wend. 25; *Jackson* v. *Post*, 15 Wend. 588; *Averill*

v. *Loucks*, 6 Barb. 373; *Hunter* v. *Watson*, 12 Cal. 363; *Ricks* v. *Reed*, 19 Cal. 553; 26 Cal. 405.)

Borel, Wohler, Middleton, Higgins, Smith, and Breed, having taken their respective conveyances, *after* the conveyances to Mahoney were recorded, had record notice. (*Jackson* v. *Post*, 15 Wend. 588; *Van Rensselaer* v. *Clark*, 17 Wend. 25; *Schutt* v. *Large*, 6 Barb. S. C. 381; *Flint, administratrix*, v. *Arnold*, 2 Metcalf, 622, 623; *Strong* v. *Smith*, 3 McLean, 362.) The judgment of *Briones and Wife* v. *Tisset and Wife* was good.

The record establishes: First, there was a complaint filed; second, that defendants voluntarily appeared and answered. (Practice Act, Secs. 523–35.) Said recital cannot be contradicted. (*Hahn* v. *Kelly*, 34 Cal. 391; *Sharp* v. *Daugney*, 33 Cal. 575; *Sharp* v. *Lumley*, 34 Cal. 616; *Banett* v. *Casney*, 34 Cal. 537.)

When it was determined that ejectment involved title, and was *res judicata* as to something more than possession (*Yount* v. *Howel*, 14 Cal.), then the reason of the rule that it could not be maintained except as against the terre tenant ceased, and to be consistent it must be held to be maintainable against him who keeps the tenant there. The landlord is as much a wrongdoer as the tenant. Should he employ another to commit any other tort he would be liable, "and if one by his agent *disseise another, he is liable to the injured party.*" (*Gurrioch* v. *Stanner*, April, 1869; *Newell* v. *Woodruff*, 30 Conn. 425, 433.)

By the Court, Rhodes, C. J.:

Action to recover possession of Rancho Laguna de la Merced. The title was confirmed to the seven heirs of Francisco de Haro as tenants in common, and the plaintiffs and all the defendants who set up title, claim under them. It is conceded that the interests held by Josefa and Alonzo—one

undivided seventh each—passed to Mahoney, and it appears that three eighths of the interest of Candelaria vested in the plaintiffs, and that the remainder of her interest vested in the defendants, or some of them.

Prudencio conveyed his interest in the rancho—one seventh—to Mahoney, June 14th, 1860, and the deed was recorded in San Francisco, July 2d, 1862, and in San Mateo, July 3d, 1862. The rancho consists of one body of land, and is situated partly in each of those counties. Prudencio also conveyed the same interest to Pichoir—under whom some of the defendants claim—June 28th, 1862, and the deed was recorded in San Francisco on the same day, and in San Mateo, July 2d, 1862. The Court found that Pichoir, before he paid any part of the purchase money, had notice in fact of the prior conveyance to Mahoney.

Carlotta conveyed her interest—one seventh—to Mahoney, March 3d, 1860, and the deed was recorded in San Mateo, April 16th, 1860, and in San Francisco, July 2d, 1862. She also conveyed the same interest to Spear, June 28th, 1862, and the deed was recorded in San Francisco on the same day, and in San Mateo, July 2d, 1862. Some of the defendants claim under this deed. The Court found that Spear, before he paid the purchase money, had notice in fact of the prior deed to Mahoney, and had also constructive notice by means of the record of a deed in San Mateo County. The question presented in regard to the conveyances of the interests of Prudencio and Carlotta, being quite similar, will be considered together.

It is admitted by the defendants' counsel, that Spear and Pichoir, in making their respective purchases and taking their conveyances, were mere trustees; that the purchases were negotiated and conveyances procured through the agency of Parsons & Thorne, and that Thorne had notice of

the prior deeds to Mahoney. Notice to Thorne, it is admitted, was notice to his principals. But it is insisted by the defendants that Wohler, who claims a portion of the interests conveyed to Spear and Pichoir, is not chargeable with the notice to Thorne, because Thorne was not his agent. Spear and Pichoir conveyed to Borel, in trust for Wohler, a certain portion of those interests, by deed dated July 14th, 1863, and the deed was recorded August 7th, 1863. The Court found, as appears from the sixteenth finding, that the defendants, except one who is named, had both actual and constructive notice of the prior conveyances to Mahoney. It will be observed that the conveyances to Mahoney, were recorded both in San Mateo and San Francisco Counties, prior to the execution of the deed to Borel. As Spear and Pichoir had notice of Mahoney's deeds, they took no interest in the land under their deeds, and of course could not convey any interest to Borel, except by the aid of the Registry Act. Their conveyance to Borel, standing by itself, passed no title, and the only mode in which it could have been made effectual, was by recording it before the deeds of Mahoney were recorded. The accumulation in this Court of cases waiting decision, forbids the discussion, at any considerable length, of this interesting question, or a review of the authorities bearing upon it. Our conclusion is, that Borel, having purchased from Spear and Pichoir, after the deeds of Mahoney were recorded, had constructive notice of those deeds, although the deeds to Spear and Pichoir were first recorded; that because of such notice, he is not a purchaser in good faith, and that therefore the deeds to Mahoney will take precedence over the deed to Borel. (See *Flynt* v. *Arnold*, 2 Met. 619; *Jackson* v. *Post*, 15 Wend. 588; *Van Rensselaer* v. *Clark*, 17 Wend. 25. The question whether Wohler had actual notice of the conveyances to Mahoney, need not be discussed.

Was the judgment recovered by Briones and wife, against

Natividad and Paul Tissot, her husband, void?    It is therein
recited that " this cause having been brought on to be heard
upon the complaint of the plaintiffs, and the confession and
answer of the defendants under oath filed herewith, by
which it appears that there was due to the plaintiffs at the
date of the commencement of said suit," etc.    The judg-
ment contains no recital in respect to the issue or service of
summons, nor does the roll contain an appearance, answer, or
demurrer on the part of the defendants.    The record being
silent as to the issuing and service of process, it will be pre-
sumed that process was duly issued and served on the
defendants.    (*Hahn* v. *Kelly*, 34 Cal. 391.)    The Court hav-
ing acquired jurisdiction of the defendants, as must be pre-
sumed, and there being no question as to its having had
jurisdiction of the subject matter of the action, the judg-
ment is not void.

There is as little ground to question the validity of the
judgment of Palmer against Rosalia and her husband,
Charles Brown, as of the judgment last mentioned.    There
is nothing in the judgment roll tending to prove that Rosalia
was not served with process, and it will be presumed, as the
defendants on this point contend, that the process was duly
served on her.    There is no legal evidence in the record in
this cause to justify the finding that she was not served.
The plaintiffs, to show the want of service, rely on the fail-
ure of the judgment roll in that case to directly show the
service; but that is manifestly insufficient and does not tend
to sustain the finding.    Were the finding sustained by the
evidence, there is still enough in the case to give the Court
jurisdiction of Rosalia, for the appearance of herself and
husband in the action, was entered by an attorney of that
Court.

The judgment in that case, ordered the Lake House tract
to be sold, in satisfaction of the amount found due on the
mortgage.    The tract was accordingly sold, and was con-

veyed by the Sheriff to the purchaser.  What interest passed
to the purchaser by that conveyance?  Throwing out of con-
sideration any possession which Brown may have had—as it
is of no moment in the controversy between the holders of
the title—it is apparent that the only title which passed, was
the undivided seventh of the interest in that tract, which
was held by Rosalia.  The purchaser took her position in
respect to the tract, and until a partition shall be made, he
and his assigns will hold the same right to the possession,
that she would have enjoyed, had her interest therein not
been sold.  Whether there are any legal or equitable reasons,
why Rosalia's interest in the whole rancho, shall be set off
so as to include the Lake House-tract, is a question that will
not arise except on proceedings for partition; but in the
meantime, the purchaser at the foreclosure sale and his
assigns, succeeded only to such right of· possession as she
held at the time of the sale.  It appears from the evidence,
that Rosalia's interest in all the rancho, except the Lake
House tract, vested in Mahoney, and that one half of her
interest in the latter tract which passed at the foreclosure
sale also vested in Mahoney, and the other half vested in
Middleton.  The decision of the Court in respect to that
interest, was in accordance with the evidence, and is correct.

There is a further question in respect to the Lake House
tract, arising upon this state of fact.  While Middleton was
the owner of the interest which passed at the foreclosure
sale, he conveyed a specific parcel of the land to Daniel
Green.  Subsequently Le Roy, claiming one undivided
seventh of the entire rancho, commenced an action of eject-
ment against Green and others, to recover the possession of
the rancho.  It was adjudged in the action, that he was the
owner of one seventh of the rancho; and he had judgment
for the possession of the same against Green and other
defendants.  After the recovery of the judgment, Le Roy
conveyed all his interest in the rancho to Mahoney.  The

interest which Green took under the deed, was the undivided seventh of the parcel described in the deed—that is to say, the title thereto which Rosalia held previous to the foreclosure sale. The judgment rendered against him, while he was thus the owner of the one seventh of the specific parcel described in the deed, operated by way of estoppel, so as to preclude him from setting up such title against Le Roy or his privies in estate. A judgment in ejectment, does not transfer to the successful party, the title of the adverse party, but if presented in the proper mode, whenever such adverse title is drawn in issue, it shuts out all proof of such adverse title. Its effect bears a closer resemblance to an extinguishment, than a transfer of the adverse title. The judgment awards the possession to the prevailing party, because he had title at the commencement of the action, and because the losing party had no title, or not such title as would authorize him to withhold the possession; but it neither directly nor indirectly transfers the title. The conveyance of Le Roy to Mahoney passed to the latter only such interest as Le Roy had before the commencement of that action; and Mahoney, by virtue of the privity in estate thus created, can avail himself of the judgment of Le Roy against Green, as a bar or by way of estoppel, as the case may require, whenever the title of Green is set up against him.

Borel was not shown to be in possession of any portion of the rancho. It has been held, from an early date, in this State, that ejectment cannot be maintained against a person who is not in possession. (*Dutton* v. *Warschauer,* 21 Cal. 609; *Hawkins* v. *Reichart,* 28 Cal. 534; *Dimick* v. *Derringer,* 32 Cal. 488.) The judgment, therefore, as to him, is erroneous.

The defendants complain of the findings and judgment, because they determine the amount of interest held by the plaintiffs, and they say that this course was both unnecessary and improper. The plaintiffs would be entitled to a recov-

ery—so far as it depended on the issue of title—upon a finding, that they held an interest in common with others in the premises. But it is not improper to find the extent of such interest. The parties may be tenants in common, and if such be the fact, they are entitled to the rents and profits in proportion to their respective interests in the premises; and in order to determine their rights in that respect, when the plaintiffs shall be admitted into possession with the defendants, it would not be improper to determine the extent of their interest. In a controversy of this character, when the Court is finding whether the plaintiff has any interest in the premises, there is no reason why the Court should not find and determine the amount of such interest. But the Court in this case erred in finding the amount of Mahoney's interest, and the length of time during which the plaintiffs had held their interests. The interest of the plaintiff, Sharp—an undivided interest of two hundred acres—was derived from Mahoney, and should be deducted from the amount of interest adjudged to be held by Mahoney. Mahoney also conveyed to Thomas I. Bergin an undivided interest of twenty acres; to John B. Felton and Benjamin S. Brooks an undivided interest of eight acres; and Susan M. Green a like interest; and to Alonzo de Haro an undivided interest of seventy acres in the rancho; and those interests should be deducted from the interest found in Mahoney.

The Court recited in the judgment, that the plaintiffs had been, for over three years next prior to the commencement of the action, the owners of the respective interests therein mentioned; but it does not appear how long before the commencement of the action Sharp acquired his interest, and it is shown that three eighths of the interest of Candelaria was conveyed to Mahoney five months before the commencement of the action, and that Le Roy conveyed his interest to Mahoney six months before the commencement of the action.

The recovery included the whole rancho, but Mahoney testified that at the commencement of the action he was in possession of about three hundred acres of the rancho. He cannot maintain the action as to the portion of which he had possession; nor should there be a recovery against any of the defendants, except as to the respective parcels in their possession. The error, however, in rendering judgment against a defendant, for land not in his possession, would be immaterial, were it not for the rule permitting the plaintiff to offer the judgment in evidence, in a suit for the recovery of damages and mesne profits.

Judgment as to Borel reversed, and cause remanded for a new trial.

Judgment as against the other appellants reversed and cause remanded for a new trial, unless the respondents shall, within twenty-five days after the filing of this opinion, release to the appellants last mentioned, all claims for damages and rents and profits, and consent that the judgment be modified in accordance with this opinion.

Release was filed and judgment was modified. (See order of Court.)

Mr. Justice CROCKETT and Mr. Justice WALLACE, being disqualified, did not participate in the decision of this case.