## SCHLICHT & FIELD CO. *v.* SHERWOOD LETTER-FILE CO.

*(Circuit Court, N. D. Illinois.* November 5, 1888.)

PATENTS FOR INVENTIONS—NOVELTY—LETTER-FILES.
    Claim 1 of letters patent No. 254,847, granted March 14, 1882, to James S. Shannon for a paper-file, in which the invention claimed is an ordinary punch attached to the base of the file, "adapted to simultaneously punch two holes in the paper, in position and of size to admit the receiving wires," is void for want of patentability in the device.

In Equity. On bill for infringement of patent.
*Banning & Banning & Payson*, for complainant.
*Dyrenforth & Dyrenforth*, for defendant.

BLODGETT, J. The bill in this case charges the defendant with the infringement of letters patent No. 254,847, granted March 14, 1882, to James S. Shannon, for a paper-file; and asks for an injunction and accounting for damages. In his specifications the patentee says:

"This invention relates to paper-files having receiving wires; and it consists in providing a punch attached to the file base or tablet, adapted to simultaneously punch as many holes in the papers to be filed as there are receiving wires on the file, and to punch them somewhat larger than, and in proper position to admit, said receiving wires. By this means the papers may lie closer and smoother on the file. They may be shifted more freely on the wires, and the apertures therein are not torn out or enlarged in filing or shifting them. It is more particularly intended as an improvement on the files described in letters patent of the United States Nos. 217,907 and 217,909, dated July 29, 1879, wherein the receiving wires are sharpened to puncture the papers, and wherein transferring wires are employed in connection with the receiving wires. In the use of said files the papers are often shifted from one pair of wires to the other, and it is found that in such frequent transfers the apertures made by the puncturing wires are apt to be torn out or enlarged. Moreover, in the act of filing, by thrusting the papers down upon the wires, the edges of the apertures so made are ragged; a burr, so to speak, is formed about the holes in the paper; and in pressing the papers down, and in shifting them, the burrs of one sheet enter the holes in the adjacent sheet above it, so that the sheets are not readily separable without inconvenience or tearing. By providing on the file a punch adapted by a single motion to cut clean-edged holes in the papers corresponding with the number and position of the receiving wires, and a little larger than the wires, the papers so punched may be more expeditiously filed; they will be flat and compact upon the tablet; they may be freely transferred from the receiving to the transfer wires, and back again; and in no ordinarily careful handling are they liable to be torn."

No claim is made in this case upon the form of construction embodied in the punch, but the patent covers simply and only the idea of affixing to a letter-file tablet a punch for the purpose of perforating the papers to be filed, so that they may be more readily manipulated upon the receiving wires of the letter-file.

Infringement in this case is charged only as to the first claim of the patent, which is:

"(1) The paper-file described, consisting of a base, A, and two parallel receiving wires, B, B, provided with a double punch mounted upon the same base, and adapted to simultaneously punch two holes in the paper in position, and of size to admit the receiving wires, substantially as set forth."

The defenses set up are (1) non-patentability of the device; and (2) that defendants do not infringe.

The defendant manufactures and sells a letter-file containing receiving and vibrating wires, operating substantially like those shown in the complainant's patent, with a punch located under the arch of the vibrating wires, so that the papers to be filed are passed through the space between the ends of the receiving and vibrating wires to the punch, where they are perforated; when they may be retracted or drawn back, and passed over the receiving wires, upon the file. The defendant's punch is attached to the tablet, and in that respect is like the complainant's, although, in the exhibits of the complainant's and defendant's tablets offered in evidence, the defendant's punch is located at a different place from the location of the punch on the complainant's tablet; but, as there is no specific place designated in the complainant's patent as to where the punch shall be located, I do not know that this difference is in any

special degree material in the consideration of this case; so that the case simply presents this question:   Is it patentable to locate any kind of a punch upon a paper-file so that the papers to be filed thereon may be punctured by the punch, to enable them to be more readily passed upon, the receiving-wires of the file?   It is obvious that the punch performs no new function, by reason of its being attached to a tablet, from what it would if it were attached to a table, window-sill, or any other location, where it could be used readily in connection with the tablet; and a patent, therefore, merely for this attachment, seems to me to come entirely within the principle laid down by the supreme court in *Hailes* v. *Van Wormer*, 20 Wall. 353, and *Reckendorfer* v. *Faber*, 92 U. S. 347.   In the latter case the patent was for the idea of attaching a piece of rubber to the end of a lead-pencil, so that the rubber could be used readily to erase pencil-marks.   In that case the rubber performed no new function by being attached to the pencil.   It was undoubtedly a convenient arrangement, whereby the rubber was readily at hand to erase or correct any mistakes made in the use of the pencil, but it was still nothing but an eraser attached to the pencil.   And the court in its opinion says:

"This combination consists only of the application of a piece of rubber to one end of the same piece of wood which makes a lead-pencil.   It is as if a patent should be granted for an article, or a manufacture, as the patentee prefers to term it, consisting of a stick twelve inches long, on one end of which is an ordinary hammer, and on the other end is a screw-driver or a tack-drawer, or, what you will see in use in every retail shop, a lead-pencil, on one end of which is a steel pen.   It is the case of a garden rake, on the handle end of which should be placed a hoe, or on the other side of the same end of of which should be placed a hoe.   In all these cases there might be the advantage of carrying about one instrument instead of two, or of avoiding the liability to loss or misplacing of separate tools.   The instruments placed upon the same rod might be more convenient for use then when used separately. Each, however, continues to perform its own duty, and nothing else.   No effect is produced, no result follows, from the joint use of the two.   A handle in common,—a joint handle,—does not create a new or combined operation. The handle for the pencil does not create or aid the handle for the eraser. The handle for the eraser does not create or aid the handle for the pencil. Each has and each requires a handle the same as it had and required, without reference to what is at the other end of the instrument; and the operation of the handle of and for each is precisely the same, whether the new article is or is not at the other end of it.   In this and the cases supposed you have but a rake, a hoe, a hammer, a pencil, or an eraser, when you are done.   The law requires more than a change of form, or juxtaposition of parts, or of the external arrangement of things, or of the order in which they are used, to give patentability."

So here the punch performs no new or increased function by being attached to the tablet.   It is still nothing but a punch, and, as the proof shows, is often attached to a table, or some other permanent fixture, so as to be convenient for use in connection with several tablets.   I therefore think that this is but an aggregation of parts, and, as such, does not come within the field of invention.   In *Pickering* v. *McCullough*, 104 U. S. 310, the supreme court, speaking by Mr. Justice MATTHEWS, said:

"In the patentable combination of old elements, all the constituents must so enter into it as that each qualifies every other. * * * It must form either a new machine of a distinct character and function, or produce a result due to the joint co-operating action of all the elements; it is not the mere adding together of separate contributions."

For these reasons I consider the defense of non-patentability is fully made out, and the bill is dismissed for want of equity.