(December 8, 1891.)

## HAMILTON v. SPOKANE AND PALOUSE RAILROAD COMPANY ET AL.

[28 Pac. 408.]

PUBLIC LANDS—PRE-EMPTION FILINGS—HOMESTEAD ENTRY—RAILROAD RIGHT OF WAY—DAMAGES.

ULTIMATE FACTS—CONCLUSIONS OF LAW.—Decision of court, under section 4407 of the Revised Statutes of Idaho, should contain only the ultimate facts found and the conclusions of law applicable to such facts.

HOMESTEAD ENTRY—RAILROAD RIGHT OF WAY—DAMAGES—PRE-EMPTION FILING.—One Wilkins filed declaratory statement November 7, 1888, and relinquished the same October 5, 1889, on which day Daniel made. homestead entry of the same tract, and on April 29, 1890, made cash entry of said tract, and on September 3, 1890, conveyed by warranty deed to Hamilton a portion of said tract. The railroad company claims right of way over tract conveyed to Hamilton, by reason of compliance with act of Congress of March 3, 1875, and the approval of the plat by the Secretary of the Interior, July 11, 1889. Hamilton claims damages because of company grading its roadbed through said conveyed tract. *Held,* that Wilkins' pre-emption filing did not exempt said land from the grant of right of way to the company, as he relinquished the same before perfecting the title; that there was no priority of estate between said Wilkins and Daniel; that patent to Daniel would take effect by relation October 5, 1889, the date of Daniel's homestead entry, and would not antedate the grant to the company.

GRANTS TO AID RAILROAD IN CONSTRUCTION AND TO RIGHT OF WAY DISTINGUISHED.—Distinction between grants of land to aid in construction of railroads and grants of right of way commented upon. Railroad right of way over public lands under act of Congress of March 3, 1875. Action by Hamilton to recover damages for grading railroad roadbed across land claimed by him. Judgment for plaintiff. Defendant appeals. Reversed.

(Syllabus by the court.)

APPEAL from District Court, Latah County.

Albert Hagan, for Appellant.

Under the practice of express findings, nothing is implied, but full findings are required without any request therefor. (Hayne on New Trial and Appeal, p. 718, sec. 239.) When a route is adopted by the company, and a map is filed with the

Secretary of the Interior, and accepted by that officer, the route is then "established." It is, in the language of the act, "definitely fixed," and cannot be the subject of future change, so as to affect the grant, except upon legislative consent. (*Van Wyck v. Knevals*, 106 U. S. 366, 1 Sup. Ct. Rep. 336.) Whoever settles upon or appropriates for any purpose, under any law of the United States, any portion of the public lands on the possible line of the right of way of a road after the date of its "distinct location," does so subject to the grant of the right of way to the railway company. (*Bybee v. Railroad Co.*, 26 Fed. 589, 590; *Railroad Co. v. Alling*, 99 U. S. 475; *Doran v. Railroad Co.*, 24 Cal. 259; *Railroad Co. v. Tevis*, 41 Cal. 492; *Union P. R. Co. v. Douglas Co.*, 31 Fed. 540; *United States v. Garretson*, 42 Fed. 22; *Turner v. Union*, 5 McLean, 344, Fed. Cas. No. 14,251; *Railroad Co. v. Meadows*, 46 Fed. 254.)

J. A. C. Freund, for Respondent.

Public grants convey nothing by implication. (*Charles River Bridge v. Warren Bridge*, 11 Pet. 420; 1 Washburn on Real Property, 202; *Bartram v. Turnpike Co.*, 25 Cal. 285; *Lansing v. Smith*, 4 Wend. 9, 21 Am. Dec. 89; *Wilcoxon v. McGhee*, 12 Ill. 381, 54 Am. Dec. 410.) A grant or a franchise must be strictly construed, and if a corporation is grantee, when there is a doubt the public should have the benefit, and the construction given against the corporation. (*Spring Val. Water Co. v. San Francisco*, 52 Cal. 112.) The cancellation of a homestead entry after a grant to the railroad, and the definite location of its line of road, does not inure to the benefit of the railroad company, but the land reverts to the government, and a person who makes a homestead entry of the same, and receives a patent therefor, after such cancellation of the first entry, is entitled to hold the same as against the railroad company. (*Railroad Co. v. Whitney*, 132 U. S. 357, 10 Sup. Ct. Rep. 112; *Railway Co. v. Dunninger*, 113 U. S. 629, 5 Sup. Ct. Rep. 566.) There must be a person *in esse* to give, as well as to take, in order to make a deed of an immediate estate by or to such person good. (3 Washburn on Real Property, 281, 282; *Hunter v. Watson*, 12 Cal. 363, 73 Am. Dec. 543.) Titles from the government and from individuals are governed by the same rules. (*Brill v.*

*Stiles,* 35 Ill. 308, 85 Am. Dec. 364; *Crear v. Crossly,* 40 Ill. 178.)

SULLIVAN, C. J.—This is an action brought by the respondent (plaintiff below) against the appellant (defendant below, and three other defendants, who are not appellants here) to recover $250, damages alleged to have been sustained by reason of appellant having graded a railway roadbed through land claimed by the respondent, and for hauling and piling dirt upon said land. The complaint alleges that the defendant is a railroad corporation; that the plaintiff, on the third day of September, 1890, was, and ever since has been, the owner of a piece or parcel of land, being a part of lot 4, section 7, township 39 north, range 3 west, Boise meridian, containing an area of two and twenty-eight hundredths acres, and described said parcel of land by metes and bounds; and, further, that the appellant, on the twentieth day of November, 1890, entered upon said land unlawfully and with force, against the wishes of respondent, and hauled a large quantity of dirt upon and graded a roadbed for a railroad track through said land, to plaintiff's damage in the sum of $250, for which sum judgment is demanded. The appellant by its answer admits that it is a duly organized and existing railroad corporation, and denies all other allegations of the complaint, except the allegation that it entered upon said land and graded a railway roadbed through said land. The answer further states that the appellant claims the right of way over the said tract of land by virtue of an act of Congress approved March 3, 1875, entitled "An act granting to railroads the right of way through the public lands of the United States"; and that it acquired the right of way over said land to the extent of one hundred feet from each side of the middle of its track by reason of a compliance with the terms and conditions of said act of Congress; and denies that plaintiff is damaged in any sum whatever by reason of said roadbed having been graded across said land. The court tried the cause without a jury, and entered judgment against the appellant for $250, damages and costs of suit. From that judgment the appellant brings the case to this court, and demands a reversal thereof, and assigns six specifications of error as ground therefor.

The first and second specifications of error are substantially as follows, and will be considered together: That there are no findings to sustain the judgment; that a written decision of the court is not a finding, and will not sustain a judgment; that, even if the written decision is a finding, it will not sustain the judgment. I do not think the objections raised by these specifications of error well taken. I am of the opinion that the written decision of the court below contains findings of fact and conclusions of law sufficient to sustain the judgment of the court below, provided such finding of facts warrants the conclusions of law. I will, however, say that the document containing the finding of facts and conclusions of law is contained in the transcript, and covers eighteen printed pages thereof. Said document contains a statement of the contents of the pleadings, the substance of the testimony, and a review and comment on the authorities cited by counsel on the argument of the case in the court below, and the reasons for the decision, but fails to technically comply with section 4407 of the Revised Statutes. Said section requires the trial court, when a case is tried to the court without a jury, to give its decision in writing, in which the facts found and the conclusions of law applicable to such facts must be separately stated. The decision should not contain a statement of the case and the reason for the decision. The said document is, technically speaking, an opinion, rather than a decision, within the meaning of the term "decision" as used in said section 4407. The "decision" should contain only the ultimate facts established by the evidence, and the conclusions of law resulting therefrom, and nothing more. (*Hidden v. Jordan,* 28 Cal. 305; *Bryan v. Maume,* 28 Cal. 244; *Jones v. Block,* 30 Cal. 229, *McClory v. McClory,* 38 Cal. 575; *Sawyer v. Sargent,* 65 Cal. 259, 3 Pac. 872; Hayne on New Trial and Appeal, sec. 242, p. 734.) The opinion of the court below will in many cases save us labor, and we are always glad to have it, but it should be entirely separate from the finding of facts and conclusions of law.

The four remaining specifications of error will be considered together, and are as follows: 3. "The evidence shows that the defendant, the Spokane and Palouse Railroad Company, has acquired a right of way over said land, and constructed the road-

bed thereover, prior to the time when the plaintiff acquired any right therein." 4. "That the defendant's map was approved July 11, 1889, by the Secretary of the Interior, and the homestead entry of William G. Daniel was not made until the fifth day of October, 1889, nor did the said Daniel sell the land in dispute to the plaintiff until September 3, 1890; therefore the said railroad company was prior in right." 5. "That the railroad line has already been built across the land in dispute prior to its purchase by Hamilton, the plaintiff, that he has no condemnable interest in the land." 6. "That upon the opinion of the court the facts as set out entitle the defendant to judgment."

The appellant contends that the evidence shows that the said Spokane and Palouse Railway Company acquired the right of way over said land on July 11, 1889, by reason of its having complied with an act of Congress dated March 3, 1875. To determine this contention, I refer to the evidence. The evidence shows that one James H. Day filed his declaratory statement No. 3,446, under the pre-emption laws of the United States, in the proper local land office, for a quarter section of land, which included the two and twenty-eight hundredths acre tract, referred to in the complaint, and thereafter, on the fifth day of November, 1888, relinquished the same to the United States; that on the seventh day of November, 1888, one James L. Wilkins filed declaratory statement No. 3,716, in the proper local land office, for said quarter section of land; that on the fifth day of October, A. D. 1889, said Wilkins relinquished the land (covered by his said filing) to the government of the United States; that on the fifth day of October, 1889, one William G. Daniel entered said land as a homestead, under and by virtue of the homestead laws of the United States, at the proper local office, claiming settlement October 4, 1889; that on the twenty-ninth day of April, 1890, said William G. Daniel commuted his said homestead entry, and made cash entry of the land covered thereby, and received the final certificate of purchase from the register of said United States land office therefor; that on the third day of September, 1890, the said William G. Daniel and Alice Daniel, his wife, for the consideration of $100, conveyed by warranty deed the said two and twenty-eight hundredths acres of land to the respondent; that the respondent

is the owner of said two and twenty-eight hundredths acre tract, and that, by reason of appellant having graded its roadbed thereover, the respondent has sustained damage, provided that appellant had not acquired a right of way over said tract of land under said act of Congress as aforesaid; that the appellant was a duly organized and existing railroad company or corporation, and that said company had complied with the terms and conditions of the said act of Congress of March 3, 1875, in regard to acquiring a right of way through the public lands of the United States; that the profile map of the appellant's road through the said two and twenty-eight hundredths acres of land (and across other lands) was approved by the Secretary of the Interior on the eleventh day of July, 1889, and such approval noted on said plat, as required by section 4 of said act. The court below substantially found the facts as above stated, with the additional fact that respondent had sustained damages in the sum of $250; and, as a conclusion of law deduced therefrom, found that the respondent was entitled to judgment for $250 and costs of suit.

There is no dispute as to the main facts. The principal point in the case, then, is as to whether the conclusion of law deduced from the finding of facts is erroneous; in other words, is the respondent entitled to judgment on the facts found? The land in question was a part of what is known and designated as "unoffered public lands of the United States." That class of land is subject to entry under the pre-emption and homestead laws of the United States. It is also included in the act of Congress above referred to, through which railroads may acquire rights of way under said act of Congress. It will be observed that the land in controversy had been filed upon under the pre-emption laws of the United States, and prior to the approval of appellant's profile map, first by one James H. Day, and after his relinquishment by James L. Wilkins, who relinquished his said filing on the fifth day of October, 1889. The inchoate pre-emption rights of Day and Wilkins under said pre-emption filings were abandoned by such relinquishments.

There is no evidence showing that either of said pre-emption claimants had complied with the pre-emption law as to settlement, residence, improvement, and cultivation. The land covered by their said filings had not been disposed of by the gov-

ernment to either of them.   It is not claimed that there was any
privity of estate between both or either of said pre-emption
claimants and William G. Daniel (the grantor of respondent),
and there was none. · The case of *Bramwell v. Railroad Cos.,* 2
Dec. Dept. Int. 844, is decisive of that point.   In that case one
Thomas filed his declaratory statement May 19, 1869, and re-
linquished the same March 29, 1871, on which last-named day
Bramwell made homestead entry of the same tract.   The defend-
ant companies claimed the tract jointly under an act of Congress
dated May 6, 1870.   The grant to the railroad companies took
effect subsequent to the date of Thomas' filing, and prior to his
relinquishment.   That case is very similar to the one at bar.
Acting Secretary Joslyn in that case (page 844) says: "I con-
cur with you [the honorable commissioner] in your opinion, as
it will be observed that the record fails to discover [disclose] any
privity of estate between Thomas and Bramwell, whereby the
latter's rights could be made to antedate the grant, or to take
effect by relation as of the date of Thomas' initiation of claim
to the premises.   Moreover, it should be observed that Thomas'
right was merely inchoate, he having relinquished without per-
fecting the same or doing anything to that end."   The record
in the case at bar discloses that Wilkins relinquished his pre-
emption filing on October 5, 1889, and that respondent's grantor
made his homestead entry for said land on said fifth day of Oc-
tober.   No privity of estate is shown or existed between Wilkins
and Daniel, whereby the latter's homestead right to said land
would be made to antedate the grant of right of way to the ap-
pellant, or to take effect, by relation, as of the date of Wilkins'
pre-emption filing.   Wilkins' pre-emption claim was merely an
inchoate or inceptive right, and he relinquished the same without
perfecting his title to the said land.   The patent from the United
States to Daniel (the grantor of respondent) will take effect, by
relation, as of the date of his homestead entry, to wit, October 5,
1889, whereas the grant to appellant was made July 11, 1889.
The land in question was not disposed of by the government un-
til after the grant of the right of way to appellant.   Section 4 of
said act provides that, after the approval of the plat, "all such
lands over which such right of way shall pass shall be disposed of
subject to such right of way."

The respondent contends that Wilkins' said pre-emption filing reserved said land from the operation of said grant, and cites a number of authorities in support of such proposition. Upon that proposition the respondent cites *Railway Co. v. Whitney,* 132 U. S. 357, 10 Sup. Ct. Rep. 112; also, *Railway Co. v. Dunmeyer,* 113 U. S. 629, 5 Sup. Ct. Rep. 566; also, *Atchison etc. R. R. Co. v. Pracht,* 30 Kan. 66, 1 Pac. 319; and *Fearns v. Railroad Co.,* 33 Kan. 275, 6 Pac. 237. These cases all arose under acts of Congress granting lands to aid in the construction of railroads, and each of said acts contains a provision reserving from such grants all lands to which a pre-emption or homestead right had attached, and are not in point. Mr. Justice Field, in the case of *Railroad Co. v. Baldwin,* 103 U. S. 426, very clearly draws the distinction between grants of land to aid in the construction of a railroad and a grant of a right of way, in the following language: "But the grant of the right of way by the sixth section contains no reservations or exceptions. It is a present, absolute grant, subject to no conditions, except those necessarily implied, such as that the road shall be constructed and used for the purpose designed. Nor is there anything in the policy of the government with respect to the public lands which would call for any qualification of the terms. Those lands would not be the less valuable for settlement by a road running through them; on the contrary, their value would be greatly enhanced." "The right of way for the whole distance of the proposed route was a very important part of the aid given. If the company could be compelled to purchase its way over any section that might be occupied in advance of its location, very serious obstacles would be often imposed to the progress of the road. For any loss of lands by settlement or reservation, other lands are given; but for the loss of the right of way by these means no compensation is provided, nor could any be given by the substitution of another route." The sixth section of the act under which that case arose is very similar to the first section of the act of March 3, 1875. It grants the right of way through the "public lands" without reservation. The act of March 3, 1875, grants the right of way through "public lands," except as reserved in section 5 of said act, to wit: "All lands within the limits of any military, park, or Indian reservation, or other lands

especially reserved from sale." In addition to the reservations
mentioned in the act of March 3, 1875, the acts granting lands
to aid in the construction of roads reserve all lands from the
effect and operation of such grants "to which a homestead or
pre-emption claim had attached." The case of *Union Pac. Ry.
Co. v. Douglass Co.*, 31 Fed. 540, cited by appellant, is a case
which arose under the act of Congress of July 1, 1862 (12 U. S.
Stats. 491), granting the right of way to the Union Pacific
Railroad Company over public lands. The question presented
was, Did the grant of the right of way operate upon sections 16
and 36, the sections granted by the organic act of 1854 to the
territory of Nebraska for school purposes? It will be observed
that the grant to the railroad was later than the grant to the
Territory of Nebraska. Mr. Justice Brewer says, on page 540 :
"But the power of Congress over lands of which the fee has
not already passed and vested is unquestioned." "In the land
grant made by this act, Congress made specific exceptions of
lands to which any pre-emption, homestead, or other claim had
attached, while the grant to the right of way is absolute and
without exception." In that case Mr. Justice Brewer also dis-
cusses the meaning of the term "public lands," referring to a
quotation from the opinion in *Wilcox v. Jackson*, 13 Pet. 498,
which authority is cited by respondent as an authority in this
case. He says: "On the meaning of the term 'public lands,' the
language, which is very broad, must be construed with reference
to the facts of that case; and there it appeared that lands had
been reserved for military purposes, and it was held that a sub-
sequent act for the sale of lands in that territory did not operate
upon this particular reserved tract. This only shows that, when
land has been once reserved, Congress will not be presumed to
have intended a disposition of it in any other way, unless the
intent is clearly expressed; but that does not meet the question
in this case, for the act of Congress of July 1, 1862, does not
purport to grant the fee, but only a right of way"; and cites
with approval *Railway Co. v. Baldwin, supra;* also, *Railroad Co.
v. United States,* 92 U. S. 733. In the following authorities,
the distinction between a land grant and a grant of a right of
way is recognized and commented upon: *Railroad Co. v. Tevis,*
41 Cal. 492; *Doran v. Railroad Co.,* 24 Cal. 259; *United States*

v. *Garretson,* 42 Fed. 22; *Turner v. Union,* Fed. Cas. No. 14,251, 5 McLean, 344; *Railroad Co. v. Meadows,* 46 Fed. 254; *Railroad Co. v. Alling,* 99 U. S. 475. In *Bybee v. Railroad Co.,* 26 Fed. 589, Judge Deady says: "The grant of a right of way is a separate and distinct matter from that of the lands to aid in the construction of the road. The reversion or forfeiture provided for in section 8 of the act of 1866 does not include the right of way, but is limited to the 'lands' remaining unpatented or unearned at the time of the failure. The grant of the right of way is without condition, except that which the law tacitly annexes to all such easements—the liability to be lost or forfeited for nonuser, ascertained and determined in a judicial proceeding instituted by the government for that purpose. But it is also a present absolute grant, and takes effect when the line of the road is located, from the date of the act, as against any intervening claim or settlement whatever." In the case at bar the grant took effect from the date of the approval of the plat, which was July 11, 1889. The act of March 3, 1875, grants the right of way through the public lands of the United States upon conditions. The only reservations therein are contained in section 5 of said act, as above stated. The inchoate pre-emption right of Wilkins, which did not ripen into title, does not come within either of the above reservations. Section 4 of said act declares that, after the approval of the profile map ·by the Secretary of the Interior, "all such lands over which such right of way shall pass shall be disposed of subject to such right of way." The government of the United States had not disposed of said land within the meaning of the term "disposed of," as used in the fourth section of said act, prior to October 5, 1889, the date of Daniel's homestead entry. The patent to be issued to Daniel will, by relation, take effect as of the date of his homestead entry, and no earlier. The judgment of the district court should be reversed, and judgment entered in favor of the appellant, dismissing this action, and for costs of suit; and it is so ordered.

Morgan and Huston, JJ., concur.